28 N.J. Super. 68 (1953)
100 A.2d 198
JOHN DANEK, PLAINTIFF,
v.
JULIUS J. HOMMER AND KATHERYN HOMMER, PARTNERS TRADING AS HOMMER TOOL MFG. CO., DEFENDANTS AND THIRD-PARTY PLAINTIFFS AS APPELLANTS,
v.
NEW JERSEY MANUFACTURERS CASUALTY INSURANCE COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, THIRD-PARTY DEFENDANT AS RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1953.
Decided October 27, 1953.
*70 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. Joseph Weintraub argued the cause for the appellants (Messrs. McGlynn, Weintraub & Stein, attorneys for third-party plaintiffs as appellants).
Mr. Robert Shaw argued the cause for the respondent (Messrs. Shaw, Hughes & Pindar, attorneys for third-party defendant as respondent).
*71 The opinion of the court was delivered by FRANCIS, J.A.D.
Appellants Julius J. Hommer and Katheryn Hommer, trading as Hommer Tool Manufacturing Co., sued respondent insurance carrier to recover counsel fees and costs incurred in defending a damage action brought against them, which action, they claimed, respondent was obligated to defend under certain policies of insurance. The trial court concluded that the action in question was not within the coverage extended by the policies and consequently the carrier had no such duty. Accordingly, an adverse summary judgment was entered.
The Hommers operated a factory at 45 McWhorter Street, Newark, N.J. In connection therewith, respondent insurance carrier issued two policies of insurance to them, one a combination standard workmen's compensation and employers liability insurance policy, and the other a public liability policy. In view of the disposition of the matter, as hereinafter set forth, it is not necessary to consider the public liability policy.
The combination insurance contract covered the Hommers' liability as employers to employees under the Workmen's Compensation Act, and also their common law liability on account of injuries to their employees. More specifically with respect to the latter undertaking, the carrier agreed "as respects personal injuries sustained by employees":
"One(b). To indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed * * *."
By indorsement it stipulated also:
"To indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account of disease, including death at any time resulting therefrom, suffered by any of his employees * * *, whether regular or casual, arising out of a business operation of this employer covered by this policy * * *."
*72 The company further agreed:
"Three. To defend, in the name and on behalf of this employer, any suits or other proceedings which may at any time be instituted against him on account of such injuries, including suits or other proceedings alleging such injuries and demanding damages or compensation therefor, although such suits, other proceedings, allegations or demands are wholly groundless, false or fraudulent."
Appellants had one Anna Danek in their employ in the business described in the policy; she was a machine operator. On October 27, 1947, she suffered a compensable accident when her right hand was caught in the machine on which she was working. The hand was amputated. Thereafter she filed a petition for compensation under the Workmen's Compensation Act and the respondent paid her claim.
Subsequently, on August 25, 1950, John Danek, the husband of Anna, instituted a common-law action against the Hommers. The complaint charged them with negligence in failing to furnish her with a reasonably safe place in which to work and in failing to have the machine on which she worked equipped with the necessary guards and protective devices, as the result of which she sustained the amputation of her hand. The husband then claimed, among other things, that because of his wife's injury, he had lost her society and services, and he sought damages therefor.
The suit papers were forwarded to the carrier which refused to defend. Appellants engaged personal counsel and, after obtaining leave of the court, filed a third-party complaint against respondent seeking a declaration of its duty to defend the negligence action and to pay the judgment, if Danek was successful.
Various motions and counter-motions were made and the parties agreed the Hommers' motion for summary judgment against Danek should be disposed of first, it being predicated on the ground that the sole remedy for Mrs. Danek's injuries was under the Workmen's Compensation Act and that this act had been substituted not only for any common law tort action which she might have had previous to its enactment, *73 but for the per quod claim of her husband as well. The motion was granted (Danek v. Hommer, 14 N.J. Super. 607 (Cty. Ct. 1951)), and the trial court was affirmed by the Supreme Court, 9 N.J. 56 (1952), the Chief Justice dissenting.
Danek's action appears to be the first time the question was raised squarely as to whether an award of workmen's compensation to a wife barred a per quod action of the husband against her employer based upon a charge of negligence. Undoubtedly it was fostered by the recent decision of the Court of Appeals of the District of Columbia Circuit in Hitaffer v. Argonne Co., 87 U.S. App. D.C. 57, 183 F.2d 811, 23 A.L.R.2d 1366 (decided May 29, 1950, about three months earlier), certiorari denied 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950). That court declared that the Federal Longshoremen's & Harbor Workers Compensation Act (33 U.S.C.A., § 901, 905), the language of which with respect to substitution of remedies is very much like our own Compensation Act, did not bar the per quod claim of a wife. The theory of the preservation of the claim was that consortium is an independent right growing out of the marital relation and not subject to extinction unless through express legislative declaration or clear repugnancy to the compensation legislation. Substantially the same view was the theme of the dissent in our Supreme Court. However, the majority of the court felt that even though the precise problem was making its first appearance in New Jersey, it was not new or novel because the language of the Workmen's Compensation Act and the decisions construing it had made clear that the compensation benefits supplied were in substitution for the preexisting common-law remedy for torts of the character involved.
Further research reveals the following earlier and later cases which are specifically opposed to the Hitaffer rule: McVey v. Chesapeake & Potomac Telephone Co., 103 W. Va. 519, 138 S.E. 97 (Sup. Ct. App. 1927); Holder v. Elms Hotel Co., 338 Mo. 857, 92 S.W.2d 620, 104 A.L.R. 339 (Sup. Ct. 1936); Bevis v. Armco Steel Corp., 156 Ohio St. *74 295, 102 N.E.2d 444 (Sup. Ct. 1951); Nelson v. A.M. Lockett & Co., 206 Okla. 334, 243 P.2d 719 (Sup. Ct. 1952).
Our discussion of the principle of law, which was debated in the litigation between Danek and the Hommers, is not engaged in to revive or reconsider that controversy. We regard that as set at rest by the determination of the Supreme Court. It is engaged in simply to note the state of the law in New Jersey and the conflict elsewhere on the subject, at the time of institution of the Danek common-law action.
With this background, we are brought to the consideration of the duty of the carrier to defend the common-law action. The trial court seems to have concluded that since the policy protected the assured against the liability imposed by law and since the law, as established in the case by the Supreme Court, imposed no such liability, because Article Two of the act substituted compensation for the entire common-law remedy in the particular case, no coverage existed for the risk presented by the complaint and therefore there was no duty to defend even as a groundless suit. Such a view, in our judgment, overlooks the coverage extended under paragraph one(b) and produces a result not compatible with the security provided by the insurer's contract.
When the insurer agreed to indemnify the Hommers "against loss by reason of the liability imposed * * * by law for damages on account of" injuries sustained by employees, and agreed "to defend * * * any suits on account of such injuries, including suits * * * alleging such injuries * * * although such suits * * * are wholly groundless, false or fraudulent," what was the extent of the obligation assumed?
On the common law aspect of the coverage, that is for the liability imposed by law, obviously the protection intended was against judgments arising out of common-law negligence actions emanating from injuries to, or occupational diseases suffered by, employees, to the extent that such liability is not within the scope of the Workmen's Compensation Act. Cf. N.J.S.A. 34:15-31.
*75 Manifestly there is no right of recovery for loss of consortium under Article II of the Workmen's Compensation Act. And plainly no such risk was contemplated under paragraph One(a) of the policy which covered the employer's liability under that act. If the right to recover for loss of consortium survived the enactment of the Workmen's Compensation Act, it would have to be enforced by a common-law action in tort predicated upon the negligence of the employer in injuring the wife. To determine if coverage exists under the policy for the risk of a judgment in such an action, we must pass over into the language of paragraph One(b) and decide whether a judgment arising out of the per quod claim would constitute a liability imposed by law within its contemplation.
In connection with the coverage for negligence actions, a preliminary question presents itself as to whether the per quod claim of a husband is included. For example, if a wife sued at law as a casual employee or for damages resulting from non-compensable occupational disease, which was produced by the negligence of the employer, would the husband's consortium claim be insured against? That it would be covered has long been settled. The decisive words appear in the undertaking of the carrier to indemnify the assured against loss imposed by law "on account of" injuries suffered by an employee. The obligation is not restricted to the liability of the assured to the employee alone.
Corpus Juris Secundum says:
"So, where a policy insures against loss from liability imposed by law on account of personal injuries or death, the policy covers liability for bodily injuries, loss of wages, hospital expenses, and loss of wife's services and consortium." 45 C.J.S., Insurance, § 827, p. 880.
Likewise in 29 Am. Jur. 922, § 1230:
"The question whether consequential damages resulting from bodily injuries to another are within the coverage of liability or indemnity policies is one of construction of the terms of the policy. Without exception, the courts have held that under policies *76 indemnifying the holder of a liability policy against legal liability for bodily injuries or death, a parent or husband suffering consequential damages as a result of bodily injuries sustained by the child or spouse is protected."
New Jersey follows the general rule. The cases of Nuzzi v. United States Casualty Co., 121 N.J.L. 249, 1 A.2d 890 (E. & A. 1938), and Kula v. Jersey Mutual Casualty Ins. Co., 8 N.J. Misc. 929, 153 A. 265 (Sup. Ct. 1930), are squarely in point. And see Annotation, 105 A.L.R. 1204.
In construing an insurance policy it must be kept in mind that presumably it is the intention of the insurer to have the insured understand that, in the event of loss, he will be protected to the full extent that any fair interpretation will allow.
The test to be applied generally in determining the scope of the liability to defend groundless suits is stated in Appleman, Insurance Law and Practice:
"An insurer's duty to defend an action against the insured is measured by the allegations in the plaintiff's pleadings, and if such pleadings state facts bringing the injury within the coverage of the policy, the insurer must defend, irrespective of the insured's ultimate liability to the plaintiff. Or, as some courts have expressed it, the language of the policy and the allegations of the complaint must be construed, to determine the insured's obligation. And an insurer is not given the opportunity of deciding whether an action, which was proper and sufficient on its face, can be successfully defended.
The nature of the claim against the insured, rather than the details of the accident, determine whether the insurer is required to defend. And it has been held that the insurer's obligation is to be determined when the action is brought and not by the outcome of the action * * *." Vol. 8, § 4683, p. 8.
And:
"* * * Accordingly, the insurer is bound to defend the insured against suits alleging facts and circumstances covered by the policy, even though such suits are groundless, false or fraudulent. Or, to put it another way, the insurer must defend any action where, if liability is established, the insurer would be liable * * *. (Sec. 4682, p. 4)
*77 A distinction is drawn between a groundless action and one, which measured by the pleadings, even if successful, would not be within the policy coverage. § 4684, p. 12; 4686, p. 24.
In 45 C.J.S., Insurance, § 933, p. 1056, the rule appears as follows:
"The duty to defend should be determined from the language of the insurance contract and from the allegations in the petition or complaint in the action brought by the one injured or damaged against insured, and the insurer's denial of liability and refusal to defend after investigating the facts must be disregarded. The obligation to defend is to be determined when the action is brought, and not by the outcome of the action."
The conclusion to be drawn from these statements is that the duty to defend comes into being when the complaint states a claim constituting a risk insured against. And the duty is not abrogated by the fact that the cause of action stated cannot be maintained against the insured either in law or in fact  in other words, because the cause is groundless, false or fraudulent. Liability of the insured to the plaintiff is not the criterion; it is the allegation in the complaint of a cause of action which, if sustained, will impose a liability covered by the policy.
So in the resolution of the problem, the complaint should be laid alongside the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment, and in reaching a conclusion, doubts should be resolved in favor of the insured. Appleman, supra, § 4683, 1953 Pocket Part.
An interesting and practical discussion of the subject appears in the opinion of Judge Learned Hand in Lee v. Aetna Casualty & Surety Co., 178 F.2d 750 (C.C.A. 2, 1949). There the complaint charged liability against the assured issuing from a risk, which was plainly excluded by the policy; also it alleged a liability arising out of facts which, if proven, would represent a covered risk.
The judge said:
*78 "Whether the insurer ought to defend such an action at least until it appears that the claim is not covered by the policy is not free from doubt; but it seems to us that we should resolve the doubt in favor of the insured. In most cases  the case at bar was one  it will not be difficult for the insurer to compel the injured party to disclose whether the injury is within the policy; and, if it transpires that it is not, the insurer need go on no longer. There may be cases, however, in which that question will remain uncertain even until the end of the trial, and, if the defendant is right, the insured will be obliged to conduct the defence of a claim which it turns out the insurer has promised to pay. We do not believe that, had the question been presented to the parties in advance, they would have agreed that the promise to defend did not include all occasions in which the insurer eventually becomes liable to pay. (178 F.2d at page 752)

* * * * * * * *
"When, however, as here, the complaint comprehends an injury which may be within the policy, we hold that the promise to defend includes it. (178 F.2d at page 753)

* * * * * * * *
"It follows that, if the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the defendant to undertake the defence, until it could confine the claim to a recovery that the policy did not cover." (178 F.2d at page 753)
In the present case, study of the policy alongside Danek's complaint brings to attention that paragraph One (b) safeguards the Hommers against a common-law liability imposed on account of injuries suffered by employees. This means, of course, liability arising out of negligence actions. As we have observed, the per quod claim of a husband is a covered risk under this type liability contract by reason of the phrase "on account of." The complaint charges the Hommers with negligence which produced Mrs. Danek's injury. It follows, therefore, that the complaint on its face states a cause of action which is comprehended by paragraph One(b).
The carrier cannot escape defending such an action because, as the Supreme Court later decided, there was no legal liability on the part of the employer to pay the claim. The determination by the court established that the suit was groundless, but the carrier specifically undertook to defend groundless suits.
*79 Here attention must be focused on the distinction between liability and coverage. The judgment of the court means that there was no liability; it does not mean there is no coverage. For example, if the opinion of the Chief Justice had been the prevailing one, can there be any doubt that the judgment in favor of Danek would have to be paid by the company? The judgment would represent a liability imposed by law on account of injuries sustained by an employee.
To illustrate further, suppose Danek's per quod action had been brought in the District of Columbia, where the Hitaffer case represents the law. Could it be maintained successfully that respondent's policy did not comprehend such a claim as a liability imposed by law?
The language of the New York Court of Appeals in Goldberg v. Lumber Mutual Cas. Ins. Co., 297 N.Y. 148, 77 N.E.2d 131, 132 (1948), is pertinent:
"Ascribing to the terms of the policy, as we must, a natural and reasonable meaning * * *, there can be no doubt that the insurance company undertook to defend such a suit as was brought against its insured. In the clearest of terms, the insurer obligated itself to handle the defense of actions against the insured whenever the complaint served upon him alleged a state of facts covered by the policy, regardless of whether such allegations squared with objective truth or were utterly false and groundless. As previously noted, the company's obligation was to `defend in the name of and on behalf of the insured any suit against the insured alleging such injury and seeking damages on account thereof, even if such suit is groundless, false or fraudulent.'
The complaint in the negligence action contained the precise allegations necessary under the policy, to compel the insurer to defend; * * *. Whether or no the insurance company would have been under a duty to pay had the tenant prevailed in the negligence suit need not now concern us, for it is crystal clear that  irrespective of this duty  the company had obligated itself to defend if a suit were brought against its insured `alleging such injury and seeking damages on account thereof.' * * *
In other words, the insurance company's duty to defend came into being when it appeared from the allegations in the negligence action that the injury was within coverage of the policy, and it persisted despite the advice  pointing a contrary conclusion  furnished by the insured to assist the company in defending the suit. * * *
The courts have frequently remarked that the duty to defend is broader than the duty to pay. Indeed, even in cases where the *80 policies do not render the allegations by the injured party controlling, it has been said: `The distinction between liability and coverage must be kept in mind. So far as concerns the obligation of the insurer to defend the question is not whether the injured party can maintain a cause of action against the insured but whether he can state facts which bring the injury within the coverage. If he states such facts the policy requires the insurer to defend irrespective of the insured's ultimate liability.' * * *"
Accord, Maryland Cas. Co. v. Pearson, 194 F.2d 284 (C.C.A. 2, 1952); London Guarantee & Accident Co. v. Shafer, 35 F. Supp. 647 (D.C.S.D. Ohio, 1940); Greer-Robbins Co. v. Pacific Surety Co., 37 Cal. App. 540, 174 P. 110 (2d Dist., 1918).
The New Jersey case of Washington Theatre Co. v. Hartford Accident & Indemnity Co., 9 N.J. Misc. 1212, 157 A. 111 (Sup. Ct. 1931), bears some analogy to the present issue. There the insurer issued a policy agreeing to pay any loss through liability imposed by law upon the assured for bodily injuries "accidentally sustained" by a patron of the theatre. One patron was assaulted by another patron and he sued the assured, charging negligence in failing to protect him from the assault. The carrier disclaimed coverage for assault and battery and sent the suit papers back to the assured, which thereupon engaged counsel and successfully defended the action. Suit was then brought for the counsel fees and cost of the defense. A recovery by the assured was sustained on the theory that the tort action sounded in negligence and was therefore one which the insured was obliged to defend.
It is not reasonable to say that the duty of the insurer to defend is determined after the issue of liability has been litigated and decided. The stipulation for defense of actions, even if groundless, would be of little value if that obligation did not arise when a claim is stated in the pleadings, which, if sustained, would be within the protection afforded by the policy. Zeitz v. Zurich General Accident & Liability Co., 165 Pa. Super. 295, 67 A.2d 742 (Super. Ct. 1949); United States Fidelity & Guaranty Co. v. Yazoo Cooperage Co., 157 Miss. 27, 127 So. 579 (Sup. Ct. 1930); Bloom etc. Co. v. *81 Union Ind. Co., 121 Ohio St. 220, 167 N.E. 884 (Sup. Ct. 1929).
The judgment is reversed and the action remanded for determination of the issue of damages.