186 N.J. Super. 253 (1982)
452 A.2d 473
HARTFORD INSURANCE GROUP, PLAINTIFF-RESPONDENT,
v.
MARSON CONSTRUCTION CORP., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1982.
Decided October 14, 1982.
*255 Before Judges MICHELS, PRESSLER and TRAUTWEIN.
Glenn R. Callahan argued the cause for the appellant (Budd, Larner, Kent, Gross, Picillo & Rosenbaum, attorneys; Mark D. Larner on the brief).
Kenneth Fost argued the cause for the respondent.
The opinion of the court was delivered by PRESSLER, J.A.D.
*256 Plaintiff Hartford Insurance Group (Hartford) brought this declaratory judgment action seeking a determination that, pursuant to the terms of the completed operations and product hazard coverage of the general comprehensive liability policy issued by it to defendant Marson Construction Corp. (Marson), it was not obliged either to defend or to indemnify Marson in respect of damage claims made against Marson by the Newark Housing Authority (Authority). Marson appeals from a summary judgment entered in Hartford's favor declaring it to have no duty to defend. We reverse.
In June 1967 the Authority awarded Marson the general construction contract, one of five prime contracts, for the construction of nine apartment houses. Some ten years later the Authority brought suit against Marson and others seeking recovery for damages it allegedly sustained as a result of Marson's defective workmanship. The basis of the claim was that Marson's improper workmanship in the construction of outside walls had caused recurring structural leaks. As that litigation proceeded it appeared that there were three categories of damages which the Authority claimed had resulted from these defects. These included the cost of correcting Marson's defective work, the cost of temporarily relocating tenants of the defective buildings, and the cost of repairing or replacing some 1500 metal panels which had been furnished and installed by one of the other prime contractors and which were allegedly damaged by the water leakage through the walls Marson had constructed.
Upon institution of the action Marson forwarded the complaint to Hartford for defense. Hartford's refusal to defend was predicated on its conclusion that the specific risk giving rise to the Authority's lawsuit was within the exclusionary terms of the policy. It commenced this separate action seeking judicial vindication of its interpretation of the policy. During the pendency of this action the underlying action by the Authority against Marson was settled, apparently without allocation of the settlement sum to the various items of damages claimed.
*257 The basis of the summary judgment in Hartford's favor and the consequent denial of Marson's motion for partial summary judgment as to the duty to defend was based on the trial judge's perception that the claims made against Marson by the Authority were within exclusion (m) of the policy to which the holding of Weedo v. Stone-E-Brick, Inc., 81 N.J. 233 (1979) applied. We are satisfied, however, that the trial judge erred and that while one or more of the Authority's damage claims may have been included within the exclusions of the policy, at least one or more of the claims were not.
As a general proposition, it is clear that under the typical liability policy, the duty of an insurer to defend is broader than its obligation to indemnify. The insurer's obligation to defend is triggered by a complaint against the insured alleging a cause of action which may potentially come within the coverage of the policy, irrespective of whether it ultimately does come within the coverage and hence irrespective of whether the insurer is ultimately obliged to pay. This principle, of course, applies where there is a factual issue between the third-party claimant and the insured, the resolution of which may result in an adjudication that at least part of the claim against the insured is within the policy coverage. See, generally, Burd v. Sussex Mutual Ins. Co., 56 N.J. 383 (1970); Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504 (1965); Danek v. Hommer, 28 N.J. Super. 68 (App.Div. 1953), aff'd o.b. 15 N.J. 573 (1954). We are satisfied that that was the case here.
The standard form of exclusion (m) of the general comprehensive liability policy here in question and upon which Hartford relies provides that the insurance does not apply "to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." Hartford further relies on the standard form of *258 exclusion (n), which provides that the insurance afforded by the policy does not apply
... to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.
The history, purpose and import of exclusion (m) was comprehensively considered by the Supreme Court in Weedo v. Stone-E-Brick, Inc., supra. That opinion makes clear that the exclusion applies only in respect of claims for damage to the insured's own work arising out of his faulty workmanship. As explained by Justice Clifford,
The insured-contractor can take pains to control the quality of the goods and services supplied. At the same time he undertakes the risk that he may fail in this endeavor and thereby incur contractual liability whether express or implied. The consequence of not performing well is part of every business venture; the replacement or repair of faulty goods and works is a business expense, to be borne by the insured-contractor in order to satisfy customers. [81 N.J. at 239]
Thus the court concluded that the predicate of exclusion (m) in the completed operations and products liability coverage of general comprehensive liability insurance is the allocation between the insurer and the insured of the various risks attendant upon faulty workmanship. The basis of the allocation is that the insured bears the risk insofar as the faulty workmanship directly affects his own work, which must consequently be repaired, corrected or replaced. Under this allocation scheme, it is clear that that element of the Authority's damages claim based on the cost of repair of Marson's faulty wall construction is within the exclusion.
Exclusion (m) does not, however, apply to damage caused by the defective work to the property of others. Weedo v. Stone-E-Brick, Inc., supra, so indicates. Moreover, the District Court of the District of Columbia, in Central Armature Works v. American Motorists Ins. Co., 520 F. Supp. 283, 288 (D.D.C. 1981), relied on Weedo in concluding that

*259 By its terms exclusion (m) excludes coverage to the insured's own work or products caused by the insured's faulty workmanship.... It does not, however, exclude damages to other property not manufactured or provided by the insured caused by the insured's poor performance.
The Commentators agree. See, e.g., Henderson, "Insurance Protection For Products Liability And Completed Operations  What Every Lawyer Should Know," 50 Neb.L.Rev. 415 (1971), in which Dean Henderson concluded that the current formulation of exclusion (m) was not intended to exclude injury to or destruction of the tangible property of others caused by the insured-contractor's faulty workmanship. As he points out:
Under the pre-1966 versions of the products hazard and completed operations provisions it was not clearly stated in the policies that consequential damages to other property as a result of deficient products or work without physical damage was not covered, as contended by the insurers. This the insurance industry has sought to clarify in the revised standard policies by providing that "damages" includes the loss of use of property resulting from property damage, and then defining "property damage" to mean "injury to or destruction of tangible property." By this it is intended that consequential damages such as loss of use, loss of good will, or diminution in market value will be covered if there is physical damage to tangible property other than the product or completed work, but that such consequential damages alone, without physical damage to other property caused by the product or completed work, will not be covered. [at 444-445].[1]
It is, therefore, clear that the Authority's claim against Marson for damage done by its defective workmanship to the metal panels installed by another prime contractor is not within exclusion (m). Nor is that element of damages within exclusion (n). Exclusion (n), with the excision of words and phrases not here relevant, reads as follows:
To damages claimed for the ... loss of use of ... work completed by ... the name insured or of any property of which such work ... form[s] a part, if such ... property [is] withdrawn ... from use because of any known or suspected defect or deficiency therein.
Thus, while exclusion (n) so read may apply to the Authority's losses in temporarily relocating tenants because of the temporary *260 unusability of the buildings, it does not on its face exclude the damage alleged to have been here done to the work of another prime contractor.
Since we have concluded that Hartford did have a duty to defend here under New Jersey law, we do not address Marson's contention that the policy should have been construed pursuant to New York law since New Jersey law affords the insured no less protection in this regard.
The summary judgment here appealed from, as we have noted, addressed only the duty to defend. Had the trial court been correct that Hartford had no such duty, it is clear that Hartford would also have had no duty to indemnify since it is only an obligation to indemnify, either actual or potential, which invokes the duty to defend. By the same token, our determination that Hartford did have a duty to defend cannot be dispositive of the existence of its duty to indemnify in whole or in part since we cannot assume the actual state of facts and, indeed, the actual state of facts was not adjudicated since the underlying action resulted in a settlement. Should Marson wish to pursue its claim for indemnification it will have to do so by further proceedings in this action in which it will be Marson's obligation to prove what portion of the settlement, if any, is reasonably allocable to the covered claim or claims.
There is one final procedural matter before us and that is the claim of Hartford that Marson's appeal was not timely filed and should therefore be dismissed. The notice of appeal was filed on July 1, 1981. The original order for summary judgment was entered on March 30, 1981. Marson thereafter moved for vacation of that order on the ground that it was "entered erroneously and improvidently" since it failed to reflect that the sole issue before the court involved the duty to defend. In response to this motion, the trial judge, on May 22, 1981, entered *261 an order "supplanting" the original March order and limiting the adjudication to the obligation to defend only.
It is clear that if the time to appeal were to run uninterruptedly from the date of the entry of the March 30 order, the notice of appeal filed on July 1 would have been too late since it would have been filed well beyond the allowable period of 45 days, plus the maximum extendable period of 30 days provided for by R. 2:4-1(a) and 2:4-4(a). We are satisfied, however, that the motion to vacate the original summary judgment order is properly characterizable as a motion to alter or amend a judgment pursuant to R. 4:49-2. That motion was in fact served within the time period provided for by that rule. R. 2:4-3 further provides that the running of the time for taking an appeal is tolled by a timely motion pursuant to R. 4:49-2. The May 22 order was not entered until May 27, 1981. Thus, between the date of the entry of that order, which disposed of the R. 4:49-2 motion, and the date of the filing of the notice of appeal, 34 days had elapsed. Since apparently not more than 7 days had elapsed[2] between the March 30 order and the date of the making of the R. 4:49-2 motion, a simple arithmetical computation demonstrates that the appeal was timely.
The order denying defendant's motion for partial summary judgment requiring plaintiff to defend and the order granting the plaintiff's motion for summary judgment relieving it of the obligation to defend are reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion.
NOTES
[1] The policy here does in fact define property damage as injury to or destruction of tangible property.
[2] Although the record does not indicate the date of the service and filing of the motion and our own inquiry of the Superior Court Clerk docket office in order to determine that date was unsuccessful, the transcript of the argument on the motion indicates that the notice of motion was received by the trial judge on April 7. We further note that the motion was made returnable on April 16 and pursuant to R. 1:6-3, the motion was required to have been filed and served 14 days before the return date, suggesting that the motion was probably filed and served prior to April 7.