774 A.2d 526 (2001)
340 N.J. Super. 223
SEARS ROEBUCK AND COMPANY, a New Jersey Corporation, Plaintiff-Respondent,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania Insurance Company, and Hartford Casualty Insurance Company, an Indiana Insurance Company, Defendants-Appellants/Third-Party Plaintiffs,
v.
Allstate Insurance Company, Third-Party Defendant.
Sears Roebuck and Company, a New Jersey Corporation, Plaintiff,
v.
National Union Fire Insurance Company of Pittsburgh, Pa, a Pennsylvania Insurance Company, Defendant/Third-Party Plaintiff-Appellant, and
Hartford Casualty Insurance Company, an Indiana Insurance Company, Defendant/Third-Party Plaintiff,
v.
Allstate Insurance Company, Third-Party Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 2001.
Decided April 26, 2001.
*528 Rudolph G. Morabito, Montclair, argued the cause for National Union Fire Insurance Company of Pittsburgh, PA, appellant in both appeals (Garrity, Graham, Favetta & Flinn, attorneys; Mr. Morabito, of counsel and on the brief).
Andrew L. Indeck, Secaucus, argued the cause for Hartford Casualty Insurance Company, appellant in A-559-99T5 (Scarinci & Hollenbeck, attorneys; Mr. Indeck and Kathleen J. Devlin, on the brief).
Arthur L. Klein (Arnstein & Lehr) of the Illinois bar, Chicago, IL, admitted pro hac vice, argued the cause for Sears, Roebuck and Company, respondent in A-599-99T5 (McCarter & English, Newark, and Mr. Klein, attorneys; David R. Kott, Newark, Deborah H. Shefrin, Chicago, IL, and Mr. Klein, on the brief).
Donald T. Okner, Fairfield, argued the cause for Allstate Insurance Company, respondent in A-642-99T5 (Dwyer, Connell & Lisbona, attorneys; Mr. Okner, on the brief).
Before Judges BAIME, WALLACE, and LINTNER.
*527 The opinion of the court was delivered by LINTNER, J.A.D.
Sears Roebuck and Company (Sears) was named as a defendant in the consolidated personal injury law suits brought by a passenger and driver who were both *529 injured when the Chevrolet Caprice which they occupied went out of control. Each alleged that Sears negligently serviced the brakes on the vehicle. Ferodo Automotive Products, Inc. (Ferodo) and Ohio Caliper, Inc. (Ohio Caliper), the manufacturers of the brake components (brake pads and calipers, respectively) used by Sears, were named as additional defendants based upon products liability. Hartford Casualty Insurance Company (Hartford) and National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union), issued General Liability Policies (GLC) respectively to Ohio Caliper and Ferodo. Both carriers appeal from summary judgment orders requiring each to indemnify and defend Sears, pursuant to the vendor's endorsement contained in the GLC policies. National Union also appeals from an order granting summary judgment in favor of Allstate Insurance Company (Allstate) dismissing National Union's third-party action.
The central issue raised by this appeal is whether the vendor's endorsements issued by Hartford and National Union provide a continuing obligation to indemnify and defend the vendor for its negligence that caused the named insured's product to undergo a change in character, which, in turn, contributed to the occurrence of the accident. We hold, under the circumstances of this case, that a substantial nexus was not shown to exist between the named insured or its product and the occurrence of the accident thereby triggering coverage under the provisions of the vendor's endorsement. We also hold that, absent facts showing a substantial nexus between the product and the occurrence of the accident, the insurers' obligation to defend, pursuant to its vendor's endorsement, ceases at the point in time when there is a legal determination that precludes the underlying products liability claim. We reverse the orders requiring Hartford and National Union to indemnify and defend Sears and remand to permit allocation of defense costs incurred during the pendency of the failed products liability claim. We also affirm the trial judge's dismissal of National Union's and Hartford's third party complaints asserting that Sears is entitled to coverage from Allstate, pursuant to the mandated omnibus clause in the policy of insurance covering the vehicle.
We combine the procedural history and the relevant facts. On July 26, 1992, Cynthia Hartmann (Hartmann) was operating a 1986 Chevrolet Caprice, owned by her mother and insured by Allstate, when she was involved in a one-car accident that resulted in serious injuries to both Hartmann and her passenger, Ann Brislin (Brislin). The driver of the vehicle in front of Hartmann stopped suddenly causing Hartmann to apply her brakes and steer to the left, as a result of which the Caprice "went out of control" into a ravine and struck a tree.
Both Hartmann and Brislin sued Sears and subsequently amended their complaints to include Ferodo and Ohio Caliper (underlying action). Hartmann also sought damages against Allstate based upon spoliation of evidence, while Brislin named Hartmann and her mother as additional defendants. Both underlying actions were eventually consolidated in July 1993.
The Caprice had been serviced by Sears several times in the year before the accident: tires were purchased and aligned in October 1991; a tire adjustment performed in April 1992; and additional tires purchased and installed in May 1992. On May 30, 1992, Sears performed a complete four-wheel brake replacement on the vehicle. Thereafter, the brakes failed twice, requiring repairs on June 1 and June 26, *530 1992. On June 29, 1992, the rear brakes locked, necessitating additional "attempted repairs." Hartmann and Brislin alleged that another brake failure caused the accident which occurred on July 26, 1992.
The underlying action charged that the repair work done by Sears was performed negligently and was defective, as were the tires and other products Sears supplied. Additionally, the amended complaints alleged that the brake components installed by Sears and manufactured by Ferodo and Ohio Caliper were defective.
Allstate paid the total loss collision claim filed by Hartmann's mother and took possession of the vehicle. Because Brislin had filed suit against Hartmann, Allstate agreed to preserve the vehicle. On September 24, 1992, Allstate wrote to Hartmann, informing her that her mother's car was in its "total loss area" located in Carteret, and would be held there "pending final disposition of the lawsuit." However, the car was later destroyed, giving rise to plaintiffs' allegation that Allstate breached its obligation, as well as written and verbal promises, to preserve the vehicle, resulting in the diminution in the value of their claims against Sears. The claims arising from Allstate's destruction of the vehicle are not the subject matter of this appeal.
On December 20, 1995, both Hartmann's and Brislin's underlying claims against Ohio Caliper were dismissed in response to Ohio Caliper's motion for summary judgment because their expert was unable to conclude that Ohio Caliper's brake calipers contributed to the happening of the accident. A similar motion by Ferodo was denied. Approximately one and one-half years later, Ferodo renewed its motion for summary judgment in the underlying action. On June 9, 1997, the products liability claim against Ferodo was dismissed based upon a concession from Hartmann's expert that he could not conclude that the pads were defectively manufactured to a reasonable engineering certainty. Also dismissed were the remaining products liability claims against Sears. Eleven months later, on March 23, 1998, Sears settled with Hartmann and Brislin for a total of $2,152,143.
Meanwhile, Sears maintained a declaratory judgment action against Hartford and National Union, which was commenced in August 1995. National Union's policy insuring Ferodo was similar to Hartford's policy providing coverage to Ohio Caliper. Each policy had limits of $1,000,000 per occurrence and $3,000,000 in the aggregate. Some time in February and August 1995, Sears had tendered its defense of the underlying action to both National Union and Hartford without success, based upon the provisions of the vendor's endorsement found in both policies. The vendor's endorsement in the National Union policy made "all the vendors of the named insured" additional insureds with respect to "all the products of the named insured." The pertinent part of the endorsement which amended the definition of who was an insured stated:
[T]o include as an insured any person or organization (referred to below as "vendor") shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional provisions:
1. The insurance afforded the vendor does not apply to:
....
e. Any failure to make such inspections, adjustment, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection *531 with the distribution or sale of the products;
f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product.
The policy issued by Hartford contained a nearly identically worded vendor's endorsement, except that Hartford numbered its exclusions, making the above-quoted exclusion (e) Hartford's "exclusion 5." Moreover, Hartford's endorsement did not contain the exclusion found in paragraph (f) of the National Union policy.
On February 21, 1997, Sears filed a motion for summary judgment in the declaratory action seeking an order requiring National Union to defend it pursuant to its policy of insurance. The motion judge denied Sears' motion. On March 7, 1997, Sears filed an interlocutory appeal, which was answered by National Union on March 19, 1997. The appeal was submitted to us on April 28, 1997. On May 5, 1997, we granted interlocutory appeal and reversed, making the following observation:
Defendant insurer has the obligation to defend which is triggered by the complainant's allegation of the vendor's product's involvement. Clearly, exclusion 1(f) does not apply; the exception stated therein is applicable to the installation of brake pads. See Pep Boys v. Cigna Indem. Ins. Co. of No. America, 300 N.J.Super. 245, 692 A.2d 546 (App. Div.1997), utilizing the issue "arising out of (your products)" language as in this case.
The order appealed from is reversed and the matter remanded for further proceedings. We do not retain jurisdiction.[1]
Notwithstanding the dismissal of the underlying products liability claims against Ferodo and Sears, which occurred subsequent to our decision in the interlocutory appeal, partial summary judgment was entered in favor of Sears in the declaratory judgment action, on October 16, 1997. The order provided: "[I]n accordance with the Order from the Appellate Division dated May 5, 1997 ... [National Union] has the obligation to defend [Sears] which is triggered by the complainant's allegation of the vendor's product's involvement."
On April 3, 1998, National Union's motion to compel Hartford to defend Sears was granted, after which we denied Hartford's motion for leave to appeal. On April 6, 1998, as a result of its settlement of the underlying action one month earlier, Sears was permitted to amend its complaint for declaratory judgment to add a claim for indemnification. On September 17, 1998, National Union filed a third-party complaint with leave of court against Allstate.
On November 6, 1998, pursuant to an agreement, the parties argued cross motions for summary judgment in the declaratory judgment action. In a written decision dated April 9, 1999, the motion judge found that there was a substantial nexus between the auto accident and the products supplied to Sears by Ohio Caliper and Ferodo, triggering a duty on the part of Hartford and National Union to defend and indemnify Sears in the underlying action. The judge also found that the duty to pay defense costs was not allocable between the insurers because coverage under the policies was triggered by "product involvement," not product defect. Furthermore, the judge concluded that "exclusion *532 5" in the vendor's endorsement did not apply because it did not expressly exclude coverage for the vendor's (Sears) own negligence.
The motion judge's opinion was memorialized in an order dated May 20, 1999. Judgment was entered in favor of Sears against National Union and Hartford in the amount of $1,000,000 each representing their applicable policy limits and portion of the $2,152,143 paid on behalf of Sears to settle the two underlying actions. Judgment was also entered in the total amount of $354,261.80 against Hartford and National Union representing Sears' cost and expenses for defending the underlying action. We denied Hartford's and National Union's subsequent motions for leave to appeal.
On July 7, 1999, Hartford, following National Union's lead, filed a third-party complaint against Allstate, after obtaining leave of court. Motions for summary judgment eventually followed by which both Hartford and National Union sought a declaration that Allstate provided coverage to Sears by virtue of Sears' omnibus status as a permissive user of the Hartmann vehicle. Allstate, in turn, filed a cross motion for summary judgment seeking to dismiss both claims. On August 6, 1999, the motion judge granted Allstate's cross motion and denied both National Union's and Hartford's motions for summary judgment. The motion judge found that the use of the vehicle by Sears during the repair process was not sufficiently contemporaneous with the underlying accident and, therefore, coverage did not attach against Allstate. On September 16, 1999, both National Union and Hartford were ordered to pay counsel fees and expenses totaling $91,756.66 incurred by Sears in prosecuting the declaratory judgment action. After timely appeals were filed, the motion judge stayed the various orders for judgment, pending appeal.
We first consider the assertion that Sears was not entitled to indemnity coverage under the vendor's endorsements in GLC policies issued by both National Union and Hartford. Both carriers assert that there was nothing in the record to support the motion judge's factual finding establishing "product involvement" of component parts manufactured and supplied by their respective insureds. They further contend that the grants of summary judgment dismissing the products liability claims against their insureds is dispositive on the issue.
When resolving disputes over the application of an insurance contract, it is the insured's burden "to bring the claim within the basic terms of the policy." Reliance Ins. Co. v. Armstrong World Indus., Inc., 292 N.J.Super. 365, 377, 678 A.2d 1152 (App.Div.1996) (citing Diamond Shamrock Chems. Co. v. Aetna Cas. & Sur. Co., 258 N.J.Super. 167, 216, 609 A.2d 440 (App.Div.1992), certif. denied, 134 N.J. 481, 634 A.2d 528 (1993)). We repeat the general principles, which guide us in construing policy language, that were set forth at length in Franklin Mut. Ins. Co. v. Security Indem. Ins. Co., 275 N.J.Super. 335, 339-340, 646 A.2d 443 (App.Div.), certif. denied, 139 N.J. 185, 652 A.2d 173 (1994).
Our function in construing a policy of insurance, as with any other contract, is to search broadly for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purpose thereof. See Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 567, 178 A.2d 185 (1962); Scarfi v. Aetna Cas. & Sur. Co., 233 N.J.Super. 509, 514, 559 A.2d 459 (App.Div.1989); Tooker v. Hartford Acc. & Indem. Co., 128 N.J.Super. 217, 222-23, *533 319 A.2d 743 (App.Div.1974) [certif. denied, 70 N.J. 137, 358 A.2d 184 (1976)]; Ins. Co. of State of Penna. v. Palmieri, 81 N.J.Super. 170, 179, 195 A.2d 205 (App.Div.1963), certif. denied, 41 N.J. 389, 197 A.2d 15 (1964). In this pursuit, a broad and liberal view should be taken so that the policy is construed in favor of the insured. Bello v. Hurley Limousines, Inc., 249 N.J.Super. 31, 40, 591 A.2d 1356 (App.Div.1991). Where the language of a policy will support two meanings, one favorable to the insured and the other favorable to the insurer, the interpretation sustaining coverage must be applied. Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7, 170 A.2d 800 (1961). Additionally, it is a well-settled principle that purchasers of insurance are entitled to "the broad measure of protection necessary to fulfill their reasonable expectations." Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961). In the language of our Supreme Court, "their policies should be construed liberally in their favor to the end that coverage is afforded `to the full extent that any fair interpretation will allow.'" Ibid.; see also Westchester Fire Ins. Co. v. Continental Ins. Companies, 126 N.J.Super. 29, 36, 312 A.2d 664 (App.Div.1973), aff'd o.b., 65 N.J. 152, 319 A.2d 732 (1974).
The question that must be answered is whether the cause of the injury, although neither expected nor foreseen, was "in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the ... risk against which they may reasonably expect those insured under the policy would be protected." Franklin Mut. Ins. Co., supra, 275 N.J.Super. at 341, 646 A.2d 443. See Westchester Fire Ins. Co., supra, 126 N.J.Super. at 38, 312 A.2d 664.
In Pep Boys v. Cigna Indem. Ins. Co., 300 N.J.Super. 245, 248, 692 A.2d 546 (App.Div.1997), we dealt with a similar vendor's endorsement which provided coverage for bodily injury "arising out of `your products' shown in the Schedule which are distributed or sold in the regular course of the vendor's business." Relying on Franklin Mut. Ins. Co., supra, 275 N.J.Super. at 340-341, 646 A.2d 443, we held that the "key phrase `arising out of the use'" must be interpreted broadly as either "growing out of the use" or "originating from the use" of the product in question. Id. at 250, 692 A.2d 546.
The critical element that triggers coverage is causation in fact between the injury for which coverage is sought and the named insured's product distributed by the vendor. We observed that, unless expressly set forth in an accompanying exclusion, the endorsement neither excludes claims which are a proximate cause of the vendor's negligence nor limits coverage to claims arising from a defect in the insured's product. Id. at 252, 692 A.2d 546. Therefore, a vendor's endorsement represents a vendor's "attempt to insure against the risk of liability generated by the business about to be conducted" through it when selling or otherwise distributing the products of another. See Harrah's Atlantic City Inc. v. Harleysville Ins. Co., 288 N.J.Super. 152, 158, 671 A.2d 1122 (App. Div.1996).
Thus, in Pep Boys, supra, 300 N.J.Super. at 255, 692 A.2d 546, we found coverage attached under the vendor endorsement in a GLC policy issued to the manufacturer of freon gas, which caused the death of a young man who intentionally inhaled the gas after purchasing it from Pep Boys, notwithstanding the fact that the estate's claim was limited to Pep Boys' negligence and not based upon a products liability theory. We observed in Pep Boys, that the actual product manufactured *534 and supplied by defendant was causally linked to the injury even though the product was misused. Id. at 254-55, 692 A.2d 546.
We, therefore, must examine the basis for the motion judge's finding that the component parts manufactured by Ferodo and Ohio Caliper were causally linked to the happening of the accident producing Hartmann's and Brislin's injuries. In reaching his conclusion that there was a substantial nexus between the component parts in question and the accident, the judge wrote:
The court is of the opinion that coverage for Sears is triggered, not by a defective product, but for the product involvement in the alleged negligent installation by Sears. Due to the fact that the allegations in the underlying action involve claims for negligent installation, servicing and/or repair of the Hartmann automobile in connection with the distribution and sale of the named insured product, the court concludes that there are no "non-covered" claims. All that need be shown for the duty to defend and indemnity to be imposed on the carriers is a substantial nexus between the occurrence and the product. Pep Boys .... Therefore, there will be no allocation of defense costs, and Hartford and National Union must reimburse Sears for all of its defense fees from July 8, 1994 until March 23, 1998.
....
Furthermore, National Union and Hartford contend that Sears has failed to prove that the brake component manufactured by Ohio Caliper was the cause-in-fact of the injures. As such, Hartford asserts that the duty to reimburse Sears has not been triggered. This court respectively disagrees, citing Diamond Shamrock Chemicals v. Aetna ... which states that "liability incurred by reasonably settling a case is a covered loss so long as the claim settled would itself have been a covered loss." To impose the burden on Sears to prove the plaintiff's case would clearly negate the policy of permitting insureds to settle and later seek reimbursement from their insurance companies. To hold otherwise would place settling defendants in the "hopelessly untenable" position of being forced to refute liability in the underlying action until the moment of settlement, and then of "turning about-face" to prove liability in the insurance action....
Since the injures to the plaintiff may have been caused arising out of the allegedly negligent installation of the Ohio Caliper and Ferodo products and fail to fall within a stated exclusion within the policies, both defendants' motions for summary judgment are denied. Sears, Roebuck and Company's application for summary judgment is granted. (Citations omitted)
In finding that Sears was entitled to indemnity, the motion judge mistakenly focused on the conclusion that the products manufactured by Ohio Caliper and Ferodo "may" have had a causal link to the accident, instead of canvassing the record to ascertain whether there was sufficient evidence upon which to reach a finding that a substantial nexus indeed existed. The reliance on the quoted section from Diamond Shamrock, supra, 258 N.J.Super. at 244-45, 609 A.2d 440, was misplaced absent facts establishing causation. At the time the underlying action was settled with Diamond Shamrock, the covered products liability claims against Diamond Shamrock for injuries caused by Agent Orange, though disputed, were still intact and about to go to trial. Id. at 193, 609 A.2d 440.
*535 Here, by contrast, the products liability claims, which would have otherwise supported indemnity coverage if viable, had been dismissed as unfounded at the time the underlying case was settled. The remaining claims in the underlying action were limited to allegations of negligence against Sears. At the time that the motion judge determined indemnity coverage in favor of Sears, it was necessary for Sears to prove that the remaining negligence claims embodied actual products manufactured or supplied by the named insured, thus establishing a substantial nexus or cause in fact between the product and the accident. Only then could a finding be made that the settlement was reasonably allocable to a claim covered pursuant to the vendor's endorsement. See Hartford Ins. Group v. Marson Constr. Corp., 186 N.J.Super. 253, 260, 452 A.2d 473 (App.Div.1982), certif. denied, 93 N.J. 247, 460 A.2d 656 (1983). It was error for the motion judge to predict that the claim that was settled "would have been a covered loss," in the absence of direct allegations against Ohio Caliper and Ferodo, without first determining the factual existence of a necessary causal connection.
Accordingly, we turn to the record to determine whether there was sufficient evidence to establish that the products supplied were a cause in fact of the accident for which Sears seeks coverage. Dr. Rudy Limpert, an engineering consultant retained by Hartmann, stated the following in his November 6, 1995 report relative to causation:
Brake system accident causation:
f. The driver of the 1886 Chevrolet Caprice had to apply the brakes in order to avoid a slowing vehicle in front. The driver also steered to the left to avoid the vehicle in front. The vehicle fish-tailed and rotated clockwise in excess of 90 degrees leaving the pavement and impacting a tree.
g. The lack of proper brake repair work by Sears caused the brake system to be defective in several respects:
1. The left rear wheel cylinder should have been replaced at the same time the right rear wheel cylinder was overhauled. This is proper repair procedure to ensure balanced braking.

The defective condition of the left rear wheel cylinder resulted in dragging of the primary shoe during normal vehicle driving without braking causing the left rear brake to overheat and the brake fluid to vaporize in the left rear wheel cylinder totally eliminating any braking by the rear brakes. This mechanical brake defect condition severely reduced the braking capacity of the vehicle, both in terms of effectiveness and response time due to increased brake pedal travel forcing, the driver to steer the vehicle at levels beyond compensatory steering wheel inputs. This condition caused the vehicle to lose directional control.
The net result of the negligent repair work by Sears with respect to the left rear brake caused the front brakes to apply approximately 0.7 seconds later than for properly working brakes, and to slow the vehicle at a significantly reduced rate at only approximately 55% of its properly repaired level due to zero braking on the rear brakes. For example, at 55 mph the theoretical stopping distance will increase by more than 178 feet just due to the defective condition of the left rear brake.
It is my opinion that the defective mechanical condition of the left rear brake with its associated problems described is the primary accident causation factor. This opinion is based upon the objective data available at the present time. (Emphasis added)
*536 A report dated April 4, 1995, from Bruce Wakefield indicated:
The right versus left-front brake pad hot/cold coefficient ratings were not the same. The left-rear wheel cylinder bore was scored and corroded with one piston apparently frozen in the bore. There were indications to suggest this wheel cylinder had been rebuilt, bled or flushed as service would dictate. All four (4) rear brake shoes were improperly arced and showed uneven contact with the drum surface. Each shoe showed indications of premature thermal stress. The left side primary shoe was subjected to high abnormal heat which melted the bonding material and saturated the lining material....

Singularly, each of the described brake abnormalities would cause a dynamic imbalance in the braking system. Collectively, they represent complications in the braking system which in a dynamic event would result in unbalanced vehicle braking and, under certain conditions, a loss of directional stability.... Consequently, I would conclude that the braking instability resulted from the work performed by Sears and not from the design of the vehicle.... Based on the evidence available, I conclude that the brake work performed by Sears on May 30, 1992, was not performed in accordance with acceptable practices generally adhered to in the repair industry or specified by the vehicle manufacturer and Sears' own guidelines. Also as a result of the brake repairs performed on May 30, 1992, due either to improper installation and/or faulty replacement brake components, a series of unresolved and progressive brake problems were experienced up to the time of the accident.... With the brake system in this condition, the braking stability designed into the vehicle was subverted. (Emphasis Added)
Wakefield's subsequent report of May 16, 1996, stated:
Clearly, each repair performed by Sears on the subject vehicle violated acceptable repair practices and Sears' own guidelines for proper brake maintenance. As a result the subject vehicle was returned to service in a defective condition demonstrated by an imbalance in the vehicles braking system....

The evidence on the rear shoes indicates saturation of the linings with bonding material which can only result from overheating or a manufacturing defect. Saturation of the linings in this manner effectively alters the coefficient of friction and creates a further imbalance in the braking system. The replacement rear brake shoes were defective and should have been replaced.... Further, the effects of braking system imbalance on the subject vehicle resulting from the saturated rear shoes and improper hydraulic repair would cause a dynamic instability in the vehicle once the brakes are applied. (Emphasis Added)
Hartmann's attorney later amended Wakefield's expert report in a letter dated June 7, 1996, to assert that Mr. Wakefield indicated that the deterioration of the brake shoe bonding materials probably was related to excessive heat, with the only other possible cause being a manufacturing defect. However, in subsequent deposition testimony, Wakefield conceded that there was only "a small percentage of possibility" that the shoes were defectively manufactured, which he could not eliminate.
The record is bare of any facts connecting the brake calipers manufactured by Hartford's insured and the happening of the accident. The only reference to the front calipers was made by Wakefield in his April 4, 1995, report where he indicated *537 "I also observed that both front brake calipers had been replaced." Interrogatories answered by Sears indicated that the calipers supplied to Hartford's insured were installed on just the front wheels.
Although replete with references to brake pads, i.e. shoes and lining, none of the reports indicate that the product itself was a cause in fact of the accident. All indications point to subversion of the brake system as the result of the improper service and installation by Sears, which effectively compromised the brake shoes causing them to become damaged in a way other than would be anticipated from normal wear and tear. Thus, the condition of the pads that contributed to the instability of the brakes resulted from other failures in the brake system, which stemmed from the work performed by Sears. The pads that existed at the time of the accident were substantially different from the product manufactured and supplied by Ferodo.
At oral argument, Sears conceded that there was no direct correlation between either product and the happening of the accident. Instead, Sears argued that the mere inclusion of the named insured's products as component parts of the subject brake system was sufficient to trigger coverage. Sears further suggested that the mere naming of additional component manufacturers in the underlying complaint would trigger their respective policies as well. We disagree. The mere presence of a component part in a failed system does not trigger coverage absent the existence of a substantial nexus or causal relationship between the actual component part supplied by the named insured and the occurrence sought to be covered.
We are satisfied from our review of the record that the condition of the pads that existed at the time of the accident was something other than what was contemplated by the parties to the insurance contract to be "a natural and reasonable incident or consequence" of the risk against which Sears might reasonably expect the policy to protected. Franklin Mut. Ins. Co., supra, 275 N.J.Super. at 341, 646 A.2d 443. The product manufactured and supplied by Ferodo bore little likeness, if any, to the pads that existed at the time of the accident. We conclude that the products manufactured and supplied by Ohio Caliper and Ferodo were not the cause-in-fact of the accident and, therefore, coverage did not attach under the vendor's endorsements. Accordingly, we need not decide the applicability of "exclusion 5" in the Ohio Caliper policy, as urged on appeal by Hartford. We move on to the issue raised concerning the duty to defend.
Both Hartford and National Union concede that they had a duty to defend up until the time their insureds succeeded in obtaining summary judgment dismissing the underlying products liability claims. The duty to defend arises when the complaint against the insured "states a claim constituting a risk insured against." Danek v. Hommer, 28 N.J.Super. 68, 77, 100 A.2d 198 (App.Div.1953), aff'd o.b., 15 N.J. 573, 105 A.2d 677 (1954). To determine whether an insurer has a duty to defend, the complaint is "laid alongside the policy" to compare the allegations with the language of the policy. Ibid. The duty to defend arises when the comparison reveals that if the allegations of the complaint are sustained, the insurer will be required to pay any resulting judgment. Any doubts are resolved in favor of the insured. Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173, 607 A.2d 1255 (1992); Danek v. Hommer, supra, 28 N.J.Super. at 77, 100 A.2d 198. Here, the allegation of products liability triggered the duty to defend. It matters not that the products liability claim was ultimately determined to be without merit. The duty to defend is not *538 abrogated by the fact that the claim may have no merit and cannot be maintained against the insured, either in law or in fact, because the cause of action is groundless, false, or fraudulent. Voorhees, supra, 128 N.J. at 174, 607 A.2d 1255. "Liability of the insured to the plaintiff is not the criterion; it is the allegation in the complaint of a cause of action which, if sustained, will impose a liability covered by the policy." Danek v. Hommer, supra, 28 N.J.Super. at 77, 100 A.2d 198.
The duty of an insurer to defend and its corresponding duty to indemnify are closely related. "[N]either duty exists except with respect to occurrences for which the policy provides coverage." Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 22, 483 A.2d 402 (1984). Thus, we have recognized that it is the "obligation to indemnify, either actual or potential, which invokes the duty to defend." Hartford Ins. Group, supra, 186 N.J.Super. at 260, 452 A.2d 473. It therefore follows that when the allegation in the underlying complaint triggering the duty to defend is determined to be groundless, the duty to defend dissipates unless there remains other viable grounds for coverage. Because we have determined that a substantial nexus did not exist between the products supplied by Ferodo and Ohio Caliper, the duty to defend did not survive the dismissal of the products liability claims. Simply put, there could be no duty to defend the claims made by Brislin and Hartmann based upon allegations confined to Sears' negligence, absent a substantial nexus between consequences of Sears' alleged conduct and the products manufactured and supplied by Ohio Caliper and Ferodo.
National Union and Hartford correctly assert that allocation of defense costs between covered and non-covered claims is generally required. In SL Indus., Inc. v. Am. Motorists Ins. Co., 128 N.J. 188, 214-15, 607 A.2d 1266 (1992), it was established that "when the insurer has wrongfully refused to defend an action and is then required to reimburse the insured for its defense costs, its duty to reimburse is limited to allegations covered under the policy, provided that the defense costs can be apportioned between covered and non-covered claims." If the defense costs cannot be apportioned, the insurer bears the costs of defense in their entirety. Id. at 215, 607 A.2d 1266. We, therefore, reverse the unallocated award of attorney fees entered in the amount of $354,261.80 and remand to permit proper allocation as to each carrier. In determining the allocation as against Hartford, the judge should use December 20, 1995, as the cut-off date beyond which Hartford's defense obligation ceased. Likewise, June 9, 1997, the date the underlying products liability claim against Ferodo was dismissed, should be the applicable cut-off date as to National Union.
In light of our ruling, we reverse and remand the order requiring Hartford and National Union to pay counsel fees and expenses totaling $91,756.66 incurred by Sears in prosecuting the declaratory judgment action. R. 4:42-9(a) provides in pertinent part: "[n]o fee for legal services shall be allowed in the taxed costs or otherwise, except ... (6) In an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." On remand, consideration should be given to the measure of success, if any, Sears experienced in obtaining defense costs, albeit limited to the underlying products liability allegations, incurred up until the time that each insured successfully moved for summary judgment. The rule permitting allowance of fees is generally applicable when an insured is successful in obtaining defense costs even though unsuccessful in obtaining indemnity under the policy. *539 Schmidt v. Smith, 294 N.J.Super. 569, 591, 684 A.2d 66 (App.Div.1996), aff'd, 155 N.J. 44, 713 A.2d 1014 (1998). Moreover, on remand, the judge should afford counsel for National Union and Hartford an opportunity to review the files and, if necessary, examine counsel regarding the reasonableness of the fees and necessity of the services rendered. Scott v. Salerno, 297 N.J.Super. 437, 452, 688 A.2d 614 (App. Div.), certif. denied, 149 N.J. 409, 694 A.2d 194 (1997).
Finally, the contention raised by both National Union and Hartford that Sears was entitled to coverage under the compulsory omnibus provisions of the Allstate policy covering the Hartmann vehicle for liability arising out of ownership, maintenance and use, is without merit. As we explained in Smithbower v. Navistar Int'l Transp. Corp., 265 N.J.Super. 119, 124, 625 A.2d 586 (App.Div.1993), the critical inquiry for determining whether a defendant is an additional insured under the omnibus clause is "whether the acts of negligence alleged against [Sears] were part of the use of the vehicle when the injury occurred." (Emphasis added) We find no merit in the arguments that coverage provided in compulsory automobile insurance should be extended to cover liability of persons other than the owner or operator for maintenance negligently performed by others on the covered automobile at some time prior to the happening of an accident. National Union's and Hartford's arguments to the contrary are legally and factually unsupported and do not warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed in part, reversed and remanded in part for further proceedings consistent with this opinion.
NOTES
[1] The order appealed from denying Sears' motion of summary judgment does not provide any reasons. We presume from the wording of the order of reversal that it was based upon our conclusion that the motion judge erred in applying exclusion 1(f).