834 A.2d 451 (2003)
364 N.J. Super. 54
INFORMATION SPECTRUM, INC., Plaintiff-Respondent,
v.
The HARTFORD, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 2003.
Decided November 10, 2003.
*453 Robert G. Devine, Westmont, argued the cause for appellant (White and Williams, attorneys; Mr. Devine and Chad A. Rutkowski, on the brief).
Derek T. Braslow, Cherry Hill, argued the cause for respondent (Sherman, Silverstein, Kohl, Rose & Podolsky, attorneys; Mr. Braslow and Alan C. Milstein, on the brief).
Before Judges SKILLMAN, COBURN and FISHER.
*452 The opinion of the court was delivered by FISHER, J.A.D.
We have previously considered an insurer's duty to defend claims brought against an insured for "advertising injuries." Tradesoft Tech., Inc. v. Franklin Mut. Ins. Co., Inc., 329 N.J.Super. 137, 746 A.2d 1078 (App.Div.2000); FileNet Corp. v. Chubb Corp., 324 N.J.Super. 419, 735 A.2d 1170 (App.Div.1999), affirming o.b., 324 N.J.Super. 476, 735 A.2d 1203 (Law Div. 1997). FileNet held that a patent infringement claim is not covered by an advertising injury endorsement, 324 N.J.Super. at 499-500, 735 A.2d 1203, and Tradesoft emphasized the importance of a claim that, in the language of the policy, the "offense" was committed in the "course of advertising" to trigger coverage, 329 N.J.Super. at 152, 746 A.2d 1078.
In this case, we conclude that a "reverse passing off" claim, in violation of the Lanham Act (15 U.S.C.A. § 1125(a)), is not an offense covered by an advertising injury endorsement. We also conclude that because the insured was not accused of offending conduct occurring "in the course of advertising [the insured's] goods, products or services," the duty to defend did not attach to any of the intellectual property claims asserted against the insured.
Accordingly, we reverse the summary judgment entered in favor of the insured and remand for the entry of summary judgment dismissing the complaint.

I
Plaintiff Information Spectrum, Inc. (the insured) claims that defendant Hartford Casualty Insurance Company (the insurer)[1] was obligated to defend a claim asserted against the insured in the United States District Court for the District of New Jersey (the federal action) by Facstore, Inc. (Facstore).
Prior to the commencement of the federal action, Facstore had written to the insured, contending the insured had misappropriated *454 its product. Rather than await Facstore's formal complaint, the insured commenced the federal action seeking a judgment declaring it had not infringed any of Facstore's property rights. Facstore answered the complaint and also asserted a counterclaim. It is this counterclaim which constitutes the claim against the insured for which it seeks coverage, in the present action, from the insurer.
As a general matter, an insurer's duty to defend is ascertained through a comparison of the policy and the claim asserted against the insured. The duty to defend, thus, "comes into being when the complaint states a claim constituting a risk insured against." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173, 607 A.2d 1255 (1992). The application of this test does not normally require resort to the evidential foundation of the claims asserted against the insured because the duty to defend will be triggered even by a "groundless, false or fraudulent" claim, Danek v. Hommer, 28 N.J.Super. 68, 76, 100 A.2d 198 (App.Div.1953), aff'd o.b., 15 N.J. 573, 105 A.2d 677 (1954), or a claim which is "poorly developed and almost sure to fail," Voorhees, supra, 128 N.J. at 174, 607 A.2d 1255. The test is whether the claimant's pleading constitutes a risk insured against which, in most cases, requires only the comparison of the claimant's pleading and the policy in question. Accordingly, we view the propriety of the summary judgment entered in favor of the insured, and the denial of the insurer's motion, through an examination of Facstore's counterclaim as superimposed upon the policy in question.

II
According to Facstore's counterclaim, the insured's business included providing technical consulting and training to law enforcement agencies in New Jersey. In November 1994, the insured approached Facstore to discuss Facstore's computerized police reporting system. The insured was interested in expanding its business and felt that a marriage of its consulting expertise with Facstore's product would prove beneficial to both. Facstore alleged that its incentive in forming such a venture was the insured's claim of having a national sales force, which would allow for the marketing of Facstore's software system on a national, and not just a statewide, basis.
On September 22, 1995, Facstore and the insured entered into a software marketing agreement which provided the insured with the exclusive right to demonstrate, market and license Facstore's software system. The agreement contained confidentiality provisions designed to keep secret Facstore's proprietary information. By November 1995, Facstore had developed a working computer-assisted dispatch and records system that enabled Facstore and the insured to successfully bid for a project for the Elizabeth Police Department.
In December 1995, the insured began marketing the system to police and emergency service departments in other New Jersey communities, including the Long Hill Police Department, Guttenberg Police Department, and East Orange Hospital. As required by the marketing agreement, Facstore provided demonstration systems to support the insured's marketing efforts, including several copies of the system and its source code.
On March 8, 1996, the first complete version of the Facstore system was released. Facstore obtained a copyright registration number for the system on July 26, 1996.
Facstore claimed that in June 1996 it discovered the insured had misrepresented *455 the existence of its national sales force, learning that the insured's claim of a national sales force was based upon a relationship the insured had with National Cash Register Co. (NCR). According to the counterclaim, NCR was then a division of American Telephone & Telegraph Company (AT & T), and when AT & T divested itself of NCR, the insured lost itsthat is, NCR's"national sales force."
Facstore soon concluded that the insured had no ability to effectively market the system beyond local police departments. This irretrievably strained their relationship and caused the termination of the exclusive marketing agreement on December 24, 1996. In its place, Facstore agreed to grant the insured the right to non-exclusively market the system, subject to the same confidentiality provisions contained in the earlier marketing agreement.
In the Spring of 1997, Facstore was advised by Paul Uram, a representative of the insured, that the Long Hill Police Department had decided not to purchase the system. Dr. Jeffrey Schram, Facstore's president, advised that he would go to Long Hill to erase the source code. Uram persuaded Schram not to do so, indicating he would take care of it. Facstore's counterclaim asserted that Uram concealed that the reason Long Hill Police Department chose not to purchase Facstore's system was that the insured had sold Long Hill the insured's "knock-off" of the Facstore system. Facstore claimed that the insured accomplished this by hiring a former Facstore programmer who had been intimately involved in the initial programming and development of the Facstore system. This former employee had left Facstore's employment in December 1996, the same approximate time that the insured's relationship with Facstore ceased being exclusive.
The counterclaim further alleged that, in June 1999, the insured demonstrated its "knock-off" at the 1999 Police Hardware Exposition in Atlantic City. Convinced that the insured had made unauthorized copies and use of Facstore's copyrighted work, and that the insured had also sold its "knock-offs" to prospects to which the insured had attempted to market the Facstore system, Facstore demanded that the insured cease and desist. It was this informal July 7, 1999 notification which prompted the insured to file its declaratory judgment action in federal court on July 22, 1999. Facstore responded with a counterclaim, which was later amended.
The counterclaim alleged that the insured infringed Facstore's copyright, violated the Lanham Act (15 U.S.C. § 1125(a)), misappropriated trade secrets, and breached the marketing agreements. The counterclaim also set forth claims of quantum meruit, fraud, tortious interference with contractual and prospective economic relationships, and intentional spoliation of evidence.
The jury in the federal action rendered a verdict in favor of the insured. As a result, this insurance coverage action only required a determination as to whether the insurer should be obligated for all or any part of the $170,988.50 in costs incurred by the insured in defending against the counterclaim, of which $162,184.50 was incurred prior to the insurer receiving notice of the suit.
The insurer denied coverage, asserting that "the offense alleged did not occur in the course of advertising [the insured's] goods, products or services" and is therefore "outside the policy terms". The insurer also relied upon the insured's late notice of the claim in declining any obligation under its policy.
The insured thereafter commenced this action. Both parties asserted that the coverage *456 issues could be decided without the need for a plenary hearing and cross-moved for summary judgment. Summary judgment was granted in favor of the insured.

III
The policy in question provided general liability coverage to the insured for occurrences taking place between December 1, 1996 and December 1, 1997. The insured concedes that this policy does not cover any of the causes of action asserted in Facstore's counterclaim except insofar as coverage may be found in the advertising injury provisions.
The policy, in this regard, provides coverage for injuries "caused by an offense committed in the course of advertising [the insured's] goods, products or services" (emphasis added). The policy further limits coverage for advertising injuries to (1) "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services"; (2) "[o]ral or written publication of material that violates a person's right of privacy"; (3) "[m]isappropriation of advertising ideas or style of doing business"; or (4) "[i]nfringement of copyright, title or slogan."
The insured concedes that the insurer did not provide coverage for most of Facstore's claims, but contends that Facstore's copyright infringement and Lanham Act claims were risks insured against. The insured also acknowledges that these copyright infringement and Lanham Act claims do not fall within the first (defamation) and second (invasion of privacy) categories of the advertising injury provision, but argues that these claims fall within either the third (misappropriation) or fourth (copyright infringement) categories.
In entering summary judgment, the motion judge made no attempt to equate any of the claims to the policy's enumerated categories and held that the duty to defend was triggered even though Facstore did not allege that the insured advertised the offending or violating product, goods or services. Instead, the motion judge held that "you do not need a discre[te] piece of advertising under the policy provision."
We conclude that only the copyright infringement claim falls within the policy's enumerated offenses. We also conclude that because the counterclaim contains no assertion that any of the pleaded injuries, including the copyright infringement claim, were caused by any advertising by the insured, no obligation to defend was triggered.

IV
We acknowledge that the copyright infringement allegations of Facstore's counterclaim fall within the enumerated offenses in the policy because the fourth category expressly includes "[i]nfringement of copyright, title or slogan." However, we reject the argument that the Lanham Act claim falls within any of the four listed categories of offenses.
Facstore alleged that the insured engaged in "reverse passing off" in violation of the Lanham Act. It is readily apparent that such contentions cannot fall within the "infringement of copyright, title or slogan" category because this category does not expressly refer to Lanham Act violations. We also reject the contention that a reverse passing off claim falls within the "misappropriation of advertising ideas or style of doing business" category.
In interpreting these provisions narrowly, we follow the approach adopted in FileNet and Tradesoft, both of which held that a patent infringement claim could not be viewed as an offense covered by the *457 advertising injury provision. We expressly acknowledged in Tradesoft that to hold otherwise would do considerable violence to the express language of the policy:
We agree that patent infringement, whether by offer to sell or otherwise, is simply not within the commonly understood meaning of "advertising ideas" or "style of doing business." Moreover, as the Law Division noted in FileNet, supra, 324 N.J.Super. at 499-500, 735 A.2d 1203, the effect of including patent infringement within the misappropriation definition "would be to find that the parties went to considerable trouble to list numerous common law torts and numerous other specifically defined offenses but also intended to provide coverage for a separate and distinct class of claims, namely patent infringement, without so much as a passing reference to the concept or the theory."
[329 N.J.Super. at 150-51, 746 A.2d 1078.]
In this regard, both Tradesoft and FileNet relied upon St. Paul Fire & Marine Ins. Co. v. Advanced Int'l Sys., 824 F.Supp. 583, 586 (E.D.Va.1993), where it was said that "it is nonsense to suppose that if the parties had intended the insurance policy in question to cover patent infringement claims, the policy would explicitly cover infringements of `copyright, title or slogan,' but then include patent infringement, sub silentio, in a different provision, by reference to `unauthorized taking of ... [the] style of doing business." Since Lanham Act claims were not mentioned either by name or description, they cannot fall within the fourth (copyright infringement) category.
We similarly conclude that Facstore's Lanham Act claim does not fall within any of the policy's other categories. "Passing off," sometimes called "palming off," occurs when a party misrepresents his own goods or services as another's.[2] "Reverse passing off," however, is the opposite; it occurs when a party "misrepresents someone else's goods or services as his own." Dastar v. Twentieth Century Fox Film Corp., ___ U.S. ___, ___, 123 S.Ct. 2041, 2045, 156 L.Ed.2d 18 (2003). Facstore alleged a claim of "reverse passing off," claiming that the insured "marketed, and continues to market, its computer assisted dispatch and reporting system by misrepresenting it as a product of [the insured's] sole design and development." This "reverse passing off" claim does not constitute a misappropriation of Facstore's advertising ideas or style of business. Instead, it was claimed that the insured used its own advertising ideas and style of business to profit from its misappropriation of the product created by Facstore. In other words, Facstore alleged that the insured took Facstore's product, not its advertising ideas. While advertising injury provisions obligate the defense of an insured accused of taking and using an advertising idea, we conclude that it does not cover falsely advertising that a product created by another was designed and manufactured by the *458 advertiser. See Green Mach. Corp. v. Zurich-Am. Ins. Group, 313 F.3d 837, 839-40 (3rd Cir.2002); Frog Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 749 (3rd Cir.1999); Applied Bolting Tech. Prods., Inc. v. United States Fid. & Guar. Co., 942 F.Supp. 1029, 1034 (E.D.Pa.1996), aff'd, 118 F.3d 1574 (3rd Cir.1997); Sorbee Int'l Ltd. v. Chubb Custom Ins. Co., 735 A.2d 712, 716-17 (Pa.Super.1999). To implicate the advertising injury endorsement, there must be an allegation that the insured took "an idea about identifying oneself to customers," Frog Switch, supra, 193 F.3d at 749, an assertion which is absent from Facstore's "reverse passing off" claim.

V
In analyzing this policy, we adhere to the approach adopted in Tradesoft that coverage under the advertising injury provision requires "a causal connection between the advertising and the injury and the injury must fall within one of the four categories defined by the policy." Tradesoft, supra, 329 N.J.Super. at 152, 746 A.2d 1078 (citing Frog Switch, supra, 193 F.3d at 751 n. 8). Accordingly, resolving whether a duty to defend attaches in this context requires not only that the injury fall within one of the four categories (which only the copyright infringement does) but also a determination of whether the claimant asserts that an injury was caused by the insured's advertising of its goods and services.
The principal misconception which led to the erroneous summary judgment in favor of the insured was the motion judge's view that it was not relevant whether the insured advertised the infringing product. We recognize that focus can be lost in intellectual property disputes because such litigation "often proceeds under a bewildering variety of different labels covering the same material facts." Frog Switch, supra, 193 F.3d at 747. In emphasizing in Tradesoft that the primary question turns on the insured's advertising as a cause of the claimant's harm, we relied upon the succinct comment of the court in Simply Fresh Fruit, Inc. v. Continental Ins. Co., 94 F.3d 1219, 1223 (9th Cir.1996) to illustrate the thrust of the advertising injury provision: in order to invoke coverage "the advertising activities must cause the injurynot merely expose it." As a result, in ascertaining whether a duty to defend has been triggered by a claim against the insured, the claim must be examined for allegations of injuries caused by the insured's advertising. Thus, the motion judge's ruling that "you do not need a discre[te] piece of advertising" is incorrect.
Apparently recognizing this, on appeal the insured has contended that Facstore's counterclaim does in fact assert that the insured's infringement was committed in the course of advertising. This contention, however, is based upon a misreading of the counterclaim. The paragraphs of the counterclaim referred to by the insured in this regard relate not to the alleged infringing activities of the insured but to the marketing activities of the insured during the period of time when the insured and Facstore were engaged in a joint venture. There is no question that Facstore and the insured had entered into marketing agreements. Any advertising activities in aid of the insured's attempts to legitimately market Facstore's product occurring during that period of time are irrelevant. That Facstore referred to these legitimate marketing efforts in its counterclaim cannot serve to trigger the insurer's obligation to defend the claims based upon the insured's later conduct. Facstore undoubtedly described these earlier events to provide an historical context for the later events for which it sought *459 relief. For there to have been an assertion of an advertising injury which would trigger coverage, the counterclaim would have had to allege that Facstore was aggrieved by the insured's advertising of its infringing or misappropriated product.
The counterclaim's only assertion of relevant advertising was Facstore's claim that the insured demonstrated its alleged infringing product at the Police Hardware Exposition in Atlantic City in June 1999. We assume without deciding that such a demonstration would constitute an act of advertising within the meaning of this policy. See Elan Pharm. Research Corp. v. Employers Ins. of Wausau, 144 F.3d 1372, 1377 (11th Cir.1998) (defining advertising as "[a]ny oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business."); Smartfoods, Inc. v. Northbrook Prop. & Cas. Co., 35 Mass. App.Ct. 239, 243-44, 618 N.E.2d 1365, 1368 (1993) (defining advertising as "a public announcement to proclaim the qualities of a product."). The advertising referred to in the counterclaim occurred after the termination of the insurer's policy since the policy only provided coverage for claims alleged to have occurred between December 1, 1996 and December 1, 1997.[3] Accordingly, Facstore's allegation of an advertising injury fell outside the time frame of the policy and could not obligate the insurer to defend.

VI
To summarize, the insured has argued that Facstore's copyright infringement and "reverse passing off" claims are the types of offenses included within the advertising injury provisions of the policy. We reject the contention that "reverse passing off" is a covered offense and, further, reject the claim that any of these offenses occurred during the course of the insured's advertising of its goods, products or services within the time frame of this policy. Accordingly, the summary judgment entered in favor of the insured is reversed and the matter remanded for the entry of summary judgment in favor of the insurer.[4]
NOTES
[1] The insured incorrectly referred to defendant Hartford Casualty Insurance Company in the caption of its complaint as "The Hartford."
[2] Because the essence of a "passing off" claim is that the defendant is alleged to have misrepresented the source of the goods as being another entity, some courts have concluded that such claims might be equated with the taking of an "advertising idea." See Cat Internet Serv., Inc. v. Providence Washington Ins. Co., 333 F.3d 138, 142 (3rd Cir.2003); Adolfo House Dist. Corp. v. Travelers Prop. and Cas. Ins. Co., 165 F.Supp.2d 1332, 1337-38 (S.D.Fla.2001); Am. Employers' Ins. Co. v. DeLorme Pub. Co. Inc., 39 F.Supp.2d 64, 75-76 (D.Me.1999); but see Advance Watch Co., Ltd. v. Kemper Nat. Ins. Co., 99 F.3d 795, 802 (6th Cir.1996). Because Facstore alleged "reverse passing off" and not "passing off," we need not resolve whether the latter falls within any of the four categories of offenses contained in the advertising injury provision.
[3] The policy expressly "applies to ... [an] `[a]dvertising injury' caused by an offense committed in the `coverage territory' during the policy period" (emphasis added).
[4] The insurer also contends that even if it was obligated to defend against Facstore's counterclaim, its liability to the insured should be limited to the defense costs incurred after it was given notice of Facstore's claim and not the $162,184.50 in defense costs incurred by the insured prior to the insurer receiving notice. See SL Indus., Inc. v. Am. Motorists Ins. Co., 128 N.J. 188, 200, 607 A.2d 1266 (1992). Because we reverse for other reasons, we need not resolve this issue.