860 A.2d 926

INFORMATION SPECTRUM, INC., PLAINTIFF–APPELLANT, v. THE HARTFORD, DEFENDANT–RESPONDENT.

Argued September 27, 2004—Decided November 22, 2004.

*Derek T. Braslow,* argued the cause for appellant (*Sherman, Silverstein, Kohl, Rose & Podolsky,* attorneys).

*Robert G. Devine,* argued the cause for respondent (*White and Williams,* attorneys; *Mr. Devine* and *Chad A. Rutkowski,* on the briefs).

*Wendy L. Mager,* submitted a brief on behalf of *amicus curiae,* Complex Insurance Claims Litigation Association (*Smith, Stratton, Wise, Heher & Brennan,* attorneys).

PER CURIAM.

The facts of this insurance coverage case are detailed in the decision of the Appellate Division. *Information Spectrum, Inc. v. The Hartford,* 364 *N.J.Super.* 54, 834 *A.2d* 451 (App.Div. 2003). At its heart is the claim of Facstore, Inc. that the insured, Information Spectrum, Inc., misappropriated a computerized police reporting system developed by Facstore. Facstore sued and the insured sought coverage[1] from The Hartford Casualty Insurance Company under an "advertising injury" clause in a Commercial General Liability policy. The policy provided:

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

\* \* \*

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result.

. . . .

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by *an offense committed in the course of advertising your goods, products or services;* but only if the offense was committed in the "coverage territory" during the policy period.

[emphasis added.]

---

[1] Only defense costs are presently involved because the insured was successful in the underlying law suit.

Hartford denied coverage and this suit followed in which the insured claimed that Facstore's complaint of misappropriation and copyright infringement, standing alone, fell within the "advertising injury" provisions of the policy although Facstore did not contend that the insured advertised the offending product. In granting summary judgment, the motion judge agreed with the insured and held that the duty to defend was triggered even without an allegation of advertising.

■ The Appellate Division reversed and remanded the case to the trial court for the entry of summary judgment in favor of the insurer. In so doing, the court properly recognized that, to be covered, there must be an allegation that the claimed injury was "caused by" an offense committed "in the course of" advertising:

[T]he advertising injury provision requires "a causal connection between the advertising and the injury and the injury must fall within one of the four categories defined by the policy." *Tradesoft [Technologies, Inc. v. Franklin Mut. Ins. Co., Inc.], supra,* 329 *N.J.Super.* [137] at 152, 746 *A.*2d 1078 [at 1087] (citing *Frog Switch [& Mfg. Co. v. Travelers Ins. Co.], supra,* 193 *F.*3d [742] at 751 n. 8). Accordingly, resolving whether a duty to defend attaches in this context requires not only that the injury fall within one of the four categories (which only the copyright infringement does) but also a determination of whether the claimant asserts that an injury was caused by the insured's advertising of its good and services.

The principal misconception which led to the erroneous summary judgment in favor of the insured was the motion judge's view that it was not relevant whether the insured advertised the infringing product. We recognize that focus can be lost in intellectual property disputes because such litigation "often proceeds under a bewildering variety of different labels covering the same material facts." *Frog Switch, supra,* 193 *F.*3d at 747. In emphasizing in *Tradesoft* that the primary question turns on the insured's advertising as a cause of the claimant's harm, we relied upon the succinct comment of the court in *Simply Fresh Fruit, Inc. v. Continental Ins. Co.,* 94 *F.*3d 1219, 1223 (9th Cir.1996) to illustrate the thrust of the advertising injury provision: in order to invoke coverage "the advertising activities must cause the injury—not merely expose it." As a result, in ascertaining whether a duty to defend has been triggered by a claim against the insured, the claim must be examined for allegations of injuries caused by the insured's advertising.

[*Information Spectrum, supra,* 364 *N.J.Super.* at 65–66, 834 *A.*2d at 458.]

■ We affirm that determination substantially for the reasons expressed in Judge Fisher's thorough and thoughtful opinion. Here Facstore never alleged that the insured advertised the

offending product, let alone that the advertising engendered the injury. Moreover, even if Facstore had complained of incidental marketing activities, that would not have brought the claim within the policy language. For the "advertising injury" provision of the policy to apply, the harm alleged must be "caused by" the advertising act itself and not by the underlying purloinment. As the Appellate Division correctly concluded, that simply did not happen here.

Affirmed.

For affirmance—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN and RIVERA–SOTO—6.

Opposed—None.