**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1027-18T4

SUPERIOR INTEGRATED
SOLUTIONS, INC.,

     Plaintiff-Respondent,

v.

MERCER INSURANCE COMPANY
OF NEW JERSEY, INC.,

     Defendant/Third-Party
     Plaintiff-Appellant,

v.

EVANSTON INSURANCE
COMPANY a/k/a MARKEL
CORPORATION,

     Third-Party Defendant-Respondent.

_____

Submitted March 16, 2020 – Decided July 10, 2020
Motion for reconsideration granted.[1]
Argued October 22, 2020 – Decided  November 10, 2020

---

[1] The order granting reconsideration and recalling the opinion was entered because appellant's original oral argument request had been overlooked by the court.

Before Judges Fasciale and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-1518-16.

Mark R. Sander argued the cause for appellant (Thomas, Thomas & Hafer, LLP, attorneys; Mark R. Sander and Charles W. Skriner, on the briefs).

Eugene Killian, Jr argued the cause for respondent Superior Integrated Solutions, Inc. (The Killian Firm, P.C., attorneys; Eugene Killian, Jr. on the brief).

PER CURIAM

In this dispute over an insurer's duty to defend, defendant Mercer Insurance Company of New Jersey, Inc. (Mercer), appeals from the Law Division's July 10, 2018 order granting summary judgment to Mercer's insured, plaintiff Superior Integrated Solutions, Inc. (Superior) and to third-party defendant Evanston Insurance Company a/k/a Markel Corporation (Evanston); a September 14, 2018 order denying in part Mercer's reconsideration motion; and from the September 21, 2018 entry of a final judgment against Mercer in the amount of $337,495.73 in favor of Superior. Superior's complaint arose from Mercer's refusal to defend Superior against claims made by a competitor, Reynolds & Reynolds Company (Reynolds) in a 2012 lawsuit. In that action, Reynolds alleged that Superior infringed upon Reynolds's copyrighted computer program in its attempt to solicit Reynolds's customers and persuade them to use Superior's services.

2

On appeal, Mercer argues that it had no duty to defend Superior under the "advertising injury" coverage provided in its policy and, even if covered, Reynolds's claims against Superior were excluded from coverage by other policy provisions because Superior's acts were intentional and related to computer programing activities. In addition, Mercer argues that Superior's activities began before Mercer's policy was in force, and the motion judge miscalculated the amount of fees and costs incurred by Superior during the underlying action. We affirm.

I.

A.

Superior coordinates and integrates software applications for car dealers' use in managing their financial and customer information. Superior purchased a liability policy from Mercer in 2011, which it renewed for an additional year beginning in November 2012.

Under section 1 of Part II B of the policy, Mercer was obligated to defend Superior in any action brought against it for, among other claims, "damages for . . . advertising injury covered by this insurance." That obligation expressly excluded "suits seeking damages not covered by this policy or allegations within a suit which are not covered by this policy."

A-1027-18T4

Section 11 of Part II B further explained the coverage for an "advertising injury." It stated the following:

> We pay for the benefit of insureds, up to the limit of liability shown in the Declarations or Declarations Supplement, those sums that insureds become legally liable to pay as damages because of:
>
> 1. Advertising Injury; . . . as described and covered by this policy, arising out of a covered offense.
>
>      . . . .
>
> This Supplemental Coverage applies only to the following:
>
> 1. Advertising Injury arising out of an offense committed in the course of advertising goods, products, or services of your business/operations covered by this policy.

Under the policy, "[a]dvertising injury" is defined as:

> 1. Infringement of copyright, slogan, title or trade dress.
>
> 2. Misappropriation of advertising ideas or style of doing business.
>
> 3. Oral or written publication of material that: slanders or libels a person or organization; disparages a person's or organization's goods, products, or services.
>
> 4. Oral or written publication of material that violates a person's right of privacy.
>
>      . . . .
>
> Advertising Injury . . . [does] not include bodily

A-1027-18T4

<u>injury or property damage.</u>

The policy also contained a number of exclusions from coverage, including claims for "[i]njury arising out of oral or written publication of material, done by or at the direction of any <u>insured</u> with knowledge that such is false or such would violate the rights of another and would inflict the injury," and for "[i]njury arising out of oral or written publication of material whose first publication took place prior to the beginning of this policy or such coverage under this policy."

The policy also excluded "Computer Software Professional Activities." That exclusion stated the following:

> Under Part II B, the Contractual Supplemental Coverage and the <u>Personal Injury/Advertising Injury</u> Supplemental Coverages do not apply to damages arising out of the rendering of, or failure to render, any professional advice, product or service by <u>you</u> or on <u>your</u> behalf in connection with the selling, licensing, franchising, creation of, modification of, integration of, or furnishing of internet access, website design, or computer software including electronic data processing programs, downloadable programs, designs, specifications, manuals and instructions.

### B.

While Mercer's policy was in force, on November 1, 2012, Reynolds filed its lawsuit against Superior in the United States District Court for the Southern District

5

of Ohio.[2]  According to its complaint, Reynolds developed and provided "automobile dealer management systems" (DMS) to automobile retailers.  DMS allowed dealers to organize and use inventory, customer contacts, financial and insurance information, and to perform other tasks in order to manage an automotive dealership.  Reynolds's primary DMS was a program called ERA through which its customers were provided with a "hosted data server" located at either "the dealership, or 'in the cloud,'" and "a licensed terminal emulator software solution . . . which serve[d] as a secure gateway through which data [could] be transmitted between the ERA server(s) and the end-user computers (i.e. "PCs") at the dealership."

Reynolds alleged that shortly after providing a July 2012 software update, its customers began to complain about problems with the system.  Reynolds discovered that Superior made an unauthorized copy of a Reynolds-authored file that Superior made available to its customers on its website.  Reynolds further alleged that Superior "directed its customers to make such unauthorized copies in violation of the Reynolds Customer Agreement" and that Superior engaged in a "scheme to make and distribute unauthorized copies of" Reynolds's file.  According to Reynolds,

---

[2]  See Reynolds & Reynolds Co. v. Superior Integrated Sols., Inc., Docket No. 1:12-cv-00848 (United States District Ct. for the Southern District of Ohio, Western Division).

Superior "actively solicited and induced Reynolds'[s] customers to provide [Superior] with access to ERA and/or to allow [Superior] to integrate with ERA in violation of the Reynolds Customer Agreements."

Reynolds stated that Superior's services had "little or no value to Reynolds'[s] customers unless [Superior had] access to the DMS and/or [could] integrate to the DMS." Reynolds concluded that Superior "actively persuaded Reynolds'[s] customers to breach their promise to Reynolds, so that [Superior] could peddle their unauthorized services to these customers for a fee."

Reynolds also alleged that Superior's copyright infringement and inducement of Reynolds's customers to breach the Reynolds Customer Agreement "substantially injured" Reynolds, "[a]t a minimum," by causing "serious technical and performance problems" for Reynolds's customers and Reynolds having had to divert significant resources to diagnose and solve the technical problems. It further alleged that Superior "profited from its theft of Reynolds'[s] intellectual property by selling integration services made possible only by its copyright infringement and unauthorized and contractually prohibited hostile integration." (Emphasis added). The complaint also alleged Superior's "motive was profit-driven." Based on those allegations, Reynolds sought an injunction and damages for: (1) direct copyright

infringement; (2) contributory copyright infringement; (3) tortious interference with contract; and (4) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.[3]

C.

Superior notified Mercer of the lawsuit and demanded coverage and a defense. Thereafter, in an exchange of communications, Mercer denied coverage and a defense, citing a number of exclusions in support of its decision. Superior challenged Mercer's reliance on the cited exclusions, but Mercer did not change its position.

Superior settled Reynolds's claim, without any payment to Reynolds, but only after having incurred $591,353.83 in costs by defending the action. However, Superior was able to recover from Evanston $337,500 of its costs under a separate "Information Technology Professional Liability and Data Breach and Privacy Liability Insurance Policy" it purchased from Evanston.

Superior then filed its complaint for breach of contract in this action against Mercer. It later amended the complaint to include a claim for breach of the duty of good faith and fair dealing. Mercer filed responsive pleadings, including a third-

---

[3] Reynolds amended its complaint in 2013 to allege that Superior advertised that it had an allegedly infringing computer program available on its website that customers could download. However, Superior never gave Mercer a copy of that amended pleading or renewed its demand for a defense and coverage.

party complaint for indemnification and contribution against Evanston, and Evanston filed its answer denying liability.

On April 27, 2018, Superior and Mercer filed motions for summary judgment. Evanston later filed a cross-motion for summary judgment as to Mercer's claim. After considering the parties' oral arguments, the motion judge entered an order on July 10, 2018, granting Superior's motion against Mercer, denying Mercer's motion against Superior, ordering Mercer to pay Superior $253,853.83 in damages, granting Evanston's cross-motion for summary judgment against Mercer, and dismissing with prejudice Mercer's third-party complaint. The judge set forth his reasons in a nearly thirty-page written decision.

In his decision, and contrary to Mercer's position, the motion judge found that Superior's conduct underlying the Reynolds action constituted "advertising" because Reynolds alleged Superior infringed its copyright by copying, distributing, and selling Reynolds's program and by instructing Reynolds's customers on how to install the software, which Superior made available for download on its website. The motion judge concluded that Reynolds's complaint asserted a claim that Superior caused Reynolds an "advertising injury," as contemplated by Mercer's policy, through copyright infringement.

Next, the judge found that the "Computer Software Professional Activities Exclusion" relied upon by Mercer was inapplicable. Although the policy stated this exclusion applied to Part II B, "Part II B lists a host of different areas of coverage, many of which would be rendered meaningless if this [exclusion] were applied— including the provision that provides coverage for advertising injuries." Therefore, because there was "no way to apply [that e]xclusion to the portion of supplemental coverage that covers advertising injuries without rendering that coverage meaningless," the judge found the exclusion inapplicable. Although the judge also found that Mercer's "Statutory Communication Violation Exclusion" applied to deny coverage as to Reynolds's claims relating to the Consumer Fraud and Abuse Act, the judge found that Mercer still had a duty to defend Superior because "the duty to defend will attach" as long as some claims were covered.

Addressing the claims against Evanston, the judge found that the Evanston policy and Mercer's policy were to be treated as "co-primary," meaning Mercer would be responsible for the balance of the defense costs, after Evanston and Superior's settlement, which amounted to less than the fifty percent Mercer should have paid. Therefore, Mercer owed Superior $253,853.83. Last, the judge found on Mercer's motion that Mercer did not breach the implied duty of good faith and fair dealing.

Thereafter, Superior filed a motion for an award of attorney's fees under Rule 4:42-9(a)(6) and for entry of final judgment. Mercer filed a motion for reconsideration of the July 10, 2018 order. On September 14, 2018, the motion judge entered an order granting Mercer's motion for reconsideration in part to correct a mathematical error, thereby reducing Superior's defense costs in the Reynolds action by $17,931.79, but denying the remainder of the motion, explaining his reasons in an attached statement in which he found that Mercer's motion was an attempt at "a second bite of the apple because it disagree[d] with the [c]ourt's decision." Addressing the amount awarded to Superior, the judge stated that although Mercer had originally sought a reduction of $31,847.12, it did not challenge Superior's calculation of the error to be $17,931.79. The judge concluded by stating that Mercer was required to pay forty-one percent of Superior's defense costs, "far less than it could have been responsible to pay if the costs had been split equally between Mercer and Evanston."

On September 21, 2018, the motion judge granted Superior's application for attorney's fees, awarded $101,573.69 in such fees, and entered a final judgment in Superior's favor in the total amount of $337,495.73, inclusive of fees. The judge stated his reasons in another statement attached to the judgment. This appeal followed.

11

## II.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Lee v. Brown, 232 N.J. 114, 126 (2018). Where a motion judge determines on summary judgment that an insurer had duty to defend, "the judge's conclusions and interpretation of the record are not entitled to our deference." Wear v. Selective Ins., 455 N.J. Super. 440, 453 (App. Div. 2018); see also R. 4:46-2.

## III.

We first address Mercer's contention that summary judgment should not have been granted to Superior because Reynolds's claims were not covered as Superior never engaged in "advertising" or they were excluded by the policy's "intentional acts exclusion," which the motion judge overlooked, the "personal/advertising injury exclusion," the "Computer Software Professional Activities Exclusion," and the "prior publication" exclusion.

## A.

First, Mercer argues that the Reynolds's complaint never alleged a covered "advertising injury" because Reynolds never alleged that Superior engaged in any "advertising." Citing to different sources, both parties agree that the plain meaning of "advertising" involves not merely the sale of an item or service, but

12

also drawing the public's attention to the service or product for the purpose of attracting customers. Their disagreement focuses on whether the Reynolds's complaint alleged advertising or only uncovered tortious acts by Superior. Primarily relying on the Supreme Court's opinion in Information Spectrum, Inc. v. Hartford, 182 N.J. 34 (2004), Mercer contends that "selling" is not "advertising" and the Reynolds's complaint never alleged any advertising by Superior sufficient to trigger its duty to defend. We disagree.

The duty to defend derives from the language of the policy. Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins., 98 N.J. 18, 22 (1984). Whether that duty exists is dependent upon "[t]he interpretation of [the] insurance policy upon established facts[, which] is a question of law for the court to determine." Wear, 455 N.J. Super. at 453. "In considering the meaning of an insurance policy, we interpret the language 'according to its plain and ordinary meaning.'" Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010) (quoting Voorhees v. Preferred Mut. Ins., 128 N.J. 165, 175 (1992)). "If the terms are not clear, but instead are ambiguous, they are construed against the insurer and in favor of the insured, in order to give effect to the insured's reasonable expectations." Ibid.

Disputes about an insurer's duty to defend are "generally determined by a side-by-side comparison of the policy and the complaint, and [the duty] is

triggered when the comparison demonstrates that if the complaint's allegations were sustained, an insurer would be required to pay the judgment." Wear, 455 N.J. Super. at 453 (citing Sears Roebuck & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 340 N.J. Super. 223, 241-42 (App. Div. 2001)). "In making that comparison, it is the nature of the claim asserted, rather than the specific details of the incident or the litigation's possible outcome, that governs the insurer's obligation." Ibid. (quoting Flomerfelt, 202 N.J. at 444).

"The duty to defend is not abrogated by the fact that the claim may have no merit and cannot be maintained against the insured, either in law or in fact, because the cause of action is groundless, false, or fraudulent." Sears Roebuck & Co., 340 N.J. Super. at 241-42. "If the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage." Voorhees, 128 N.J. at 173-74 (citing Cent. Nat'l Ins. v. Utica Nat'l Ins., 232 N.J. Super. 467, 470 (App. Div. 1989)). The analysis of the allegations is not limited to the complaint itself, but rather "facts outside the complaint may trigger the duty to defend." SL Indus., Inc. v. Am. Motorists Ins., 128 N.J. 188, 198 (1992). If after conducting its analysis, an insurer decides that it will not provide a defense for a claim, its decision is subject to "an obligation to reimburse for defense costs to the extent that the defense is later determined to have been attributable to the covered

14

claims and, if coverage is not determinable in the underlying action, it is later determined that there was in fact coverage." Wear, 455 N.J. Super. at 455 (quoting Muralo Co. v. Emp'rs Ins. of Wausau, 334 N.J. Super. 282, 289-90 (App. Div. 2000)).

In Information Spectrum, the insured was accused of direct copyright infringement (the sale of infringing software) and the copyright holder never alleged that advertising engendered that injury. Info. Spectrum, 182 N.J. at 36-38. In affirming our earlier opinion, Information Spectrum, Inc. v. Hartford, 364 N.J. Super. 54 (App. Div. 2003), the Court held "[f]or the 'advertising injury' provision[s] of [a] policy to apply, the harm alleged must be 'caused by' the advertising act itself and not by the underlying purloinment." Info. Spectrum, 182 N.J. at 38.

Quoting with approval from our opinion, the Court stated that in order to

> resolv[e] whether a duty to defend attaches in this context requires not only that the injury fall within one of the four categories [defined in the policy] (which only the copyright infringement does) but also a determination of whether the claimant asserts that an injury was caused by the insured's advertising of its good[s] and services.
>
> [Id. at 37 (quoting Info. Spectrum, 364 N.J. Super. at 66).]

"[T]he advertising activities must cause the injury—not merely expose it." Ibid. (quoting Info. Spectrum, 364 N.J. Super. at 66). Under Information Spectrum, the test is whether the relationship between the advertising activity and the copyright holder's injury is causal or incidental. Id. at 38. If it is causal, there is coverage; if the advertising activity is only incidental, then there is no coverage. Ibid.

In Information Spectrum, an insured under a policy with similar provisions was sued for selling a counterfeit "computerized police reporting system" and demonstrating that system at a police convention.[4] Info. Spectrum, 364 N.J. Super. at 59-61. That caused the filing of a lawsuit against the insured for "infring[ing a] copyright, violat[ing] the Lanham Act (15 U.S.C. § 1125(a)), misappropriat[ing] trade secrets, . . . breach[ing] the marketing agreements[,] . . . quantum meruit, fraud, tortious interference with contractual and prospective economic relationships, and intentional spoliation of evidence."

---

[4] Although "[w]e assume[d] without deciding that such a demonstration would constitute an act of advertising within the meaning of this policy[, s]ee Elan Pharm. Research Corp. v. Emp'rs Ins. of Wausau, 144 F.3d 1372, 1377 (11th Cir. 1998) (defining advertising as '[a]ny oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business.')," we concluded the demonstration occurred outside the policy period and therefore was not a covered advertising injury. Info. Spectrum, 364 N.J. Super. at 66.

<u>Id.</u> at 61. The pleading "alleged a claim of 'reverse passing off,'" and stated that the insured "marketed, and continues to market, its computer assisted dispatch and reporting system by misrepresenting it as a product of [the insured's] sole design and development." <u>Id.</u> at 65 (alteration in original). The copyright holder "never alleged that the insured advertised the offending product." <u>Info. Spectrum</u>, 182 N.J. at 38.

"We conclude[d] that [while] only the copyright infringement claim f[ell] within the policy's enumerated offenses[,] . . . because the [pleading] contain[ed] no assertion that any of the pleaded injuries, including the copyright infringement claim, were caused by any advertising by the insured, no obligation to defend was triggered." <u>Info. Spectrum</u>, 364 N.J. Super. at 63. As we stated, and the Supreme Court affirmed, "falsely advertising that a product created by another was designed and manufactured by the advertiser," was not an advertising injury under the policy. <u>Id.</u> at 65. Further, we noted that in order for advertising injury coverage to apply, the underlying action must allege "a discre[te] piece of advertising." <u>Id.</u> at 66 (alteration in original).

Contrary to Mercer's argument here, what occurred in <u>Information Spectrum</u> is different than this case. Reynolds alleged that Superior profited from its theft of Reynold's intellectual property and was able to sell its integration services

"only by its copyright infringement and unauthorized and contractually prohibited hostile integration." It did not allege that Superior was representing Reynolds's product as its own. Rather, through its infringement, Reynolds alleged that Superior was able to inform potential customers that they would be able to continue to integrate with Reynolds's system while using Superior's services.

Comparing the plain language of the policy to Reynolds's allegation that Superior "profited from its theft of Reynolds'[s copyrighted] intellectual property by selling integration services made possible only by its copy infringement," we conclude that Reynolds's complaint asserted a "discrete piece of advertising" giving rise to a covered claim of an advertising injury which triggered Mercer's duty to defend. Here, not only was Superior charged with "purloining" Reynolds's protected intellectual property, but also with soliciting customers services that it would not have been able to promote without including in its information that they could interface with Reynolds's program while using Superior's services. Because Reynolds specifically claimed that Superior infringed by incorporating Reynolds's protected intellectual property in making its product known to Reynolds's customers and others, Superior demonstrated the requisite causal link between the advertising activity and the offense (copyright infringement). That "advertising," and the infringement employed in that advertising gave rise to colorable claim of an

"advertising injury" under Mercer's policy. See Elan Pharm. Research Corp., 144 F.3d at 1377 (stating that "[a]ny oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business" constitutes advertising (quoting Black's Law Dictionary 54 (6th ed. 1990))); see also Flomerfelt, 202 N.J. at 444 (stating that "if a complaint includes multiple or alternative causes of action, the duty to defend will attach as long as any of them would be a covered claim and it continues until all of the covered claims have been resolved").

Moreover, although an insured's advertising activities must be a cause of the claimant's injury, it does not necessarily mean such advertising activities must be the only cause of the injury. Info. Spectrum, 182 N.J. at 37. Information Spectrum does not suggest that the infringement must be contained within the "four corners" of the advertisement.

Also, the language of the insurance policy does not demand that copyright infringement occur in the advertising itself. To the contrary, the language of the policy is broad, defining "advertising injury," in part, as: "[i]nfringement of copyright, slogan, title or trade dress."

## B.

Mercer next argues that even if Reynolds's complaint sufficiently alleged that Superior advertised, the complaint never alleged that the copyright infringement was caused by plaintiff's advertising. We find no merit to this assertion.

"[I]n ascertaining whether a duty to defend has been triggered by a claim against the insured, the claim must be examined for allegations of injuries caused by the insured's advertising." Info. Spectrum, 364 N.J. Super. at 66. "[C]overage under the advertising injury provision requires 'a causal connection between the advertising and the injury . . . .'" Id. at 65-66 (quoting Tradesoft Techs., Inc. v. Franklin Mut. Ins., 329 N.J. Super. 137, 152 (App. Div. 2000)).

Here, Reynolds's complaint alleged that but for Superior's infringement it would not have had any ability to successfully solicit Reynolds's customers, who already had Reynolds's programs in place. Those allegations satisfied the requirement that the injury be causally related. Whether those allegations are later proven to be untrue is irrelevant to our determination. Because the duty to defend is broader than the duty to indemnify, see Hofing v. CNA Ins., 247 N.J. Super. 82, 88 (App. Div. 1991), we will not relieve an insurer of the duty to defend where a "'potentially coverable' claim[] require[s] a defense," Abouzaid v. Mansard Gardens Assocs., LLC, 207 N.J. 67, 80 (2011) (quoting Stafford v. T.H.E. Ins., 309 N.J. Super. 97, 103 (App. Div.

A-1027-18T4

1998)), regardless of whether "the cause of action stated cannot be maintained against the insured either in law or in fact—in other words, because the cause is groundless, false or fraudulent." Id. at 81 (quoting Danek v. Hommer, 28 N.J. Super. 68, 77 (App. Div. 1953), aff'd, 15 N.J. 573 (1954)).

C.

Our conclusion that the claims were covered as "advertising injuries," requires us to next consider whether the claims were otherwise excluded by other provisions of the policy. We conclude they were not excluded.

"[I]f an excluded claim is made, the insurer has no duty to undertake the expense and effort to defeat it, however frivolous it may appear to be." Wear, 455 N.J. Super. at 456 (quoting Grand Cove II Condo. Ass'n v. Ginsberg, 291 N.J. Super. 58, 72 (App. Div. 1996)). However, "exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion." Flomerfelt, 202 N.J. at 442 (quoting Am. Motorists Ins. v. L-C-A Sales Co., 155 N.J. 29, 41 (1998)). "[E]xclusions are ordinarily strictly construed against the insurer, and if there is more than one possible interpretation of the language, courts apply the meaning that supports coverage rather than the one that limits it." Ibid. (citations omitted).

Courts will find "a genuine ambiguity to arise where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Wear, 455 N.J. Super. at 454 (quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979)). But, "[f]ar-fetched interpretations of a policy exclusion are insufficient to create an ambiguity requiring coverage." Ibid. (quoting Stafford, 309 N.J. Super. at 105).

Moreover, exclusions "are presumptively valid and enforceable 'if they are "specific, plain, clear, prominent, and not contrary to public policy."'" Ibid. at 454 (quoting Flomerfelt, 202 N.J. at 441). "[I]f the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" Mem'l Props., LLC v. Zurich Am. Ins., 210 N.J. 512, 528 (2012) (quoting Flomerfelt, 202 N.J. at 442). "Courts must be careful, however, 'not to disregard the "clear import and intent" of a policy's exclusion . . . .'" Wear, 455 N.J. Super. at 454 (alteration in original) (quoting Flomerfelt, 202 N.J. at 442).

(i).

With those guiding principles in mind, we turn to Mercer's argument that its "intentional acts" exclusion relieved it of its duty to defend. The exclusion appeared in section 11 of Part II B and stated the following:

22

Advertising Injury Exclusions.

We do not insure any of the following:

1. Injury arising out of oral or written publication of material, done by or at the direction of any insured with knowledge that such is false or such would violate the rights of another and would inflict the injury.
[Emphasis added.]

Mercer contends that this provision excluded coverage for claims arising out of Superior's "intentional acts" and that since "it is clear that all of Reynolds's claims in its [c]omplaint alleged intentional conduct" by Superior, the claim was excluded and therefore Mercer had no duty to defend. We disagree.

The exclusion states that intentional injuries, rather than intentional acts, caused by the insured are excluded from coverage where publication is made with knowledge it is false or violative of another's rights. The burden was on Mercer to establish that Reynolds's complaint alleged an intentionally caused injury. See Hammer v. Thomas, 415 N.J. Super. 237, 249 (App. Div. 2010) (stating that the insurer has the burden to bring the matter within the policy exclusion). Mercer failed to meet its burden because it cannot cite to any allegation made by Reynolds that Superior intended to injure Reynolds with its conduct.

A claimant's mere allegation of intentional harm does not alone justify an insurer's refusal to provide a defense. In order to bring the insured's conduct within

23

the exclusion there must be evidence that the insured subjectively intended to injure the claimant. See SL Indus., 128 N.J. at 212. "Absent exceptional circumstances that objectively establish the insured's intent to injure, we will look to the insured's subjective intent to determine intent to injure." Voorhees, 128 N.J. at 185.

Here, Reynolds never alleged that it suffered an intentional injury. Reynolds never alleged Superior intended to harm Reynolds. Rather, the complaint stated Superior's copyright infringement was profit-driven. Reynolds alleged it was injured when Superior, while promoting its services in pursuit of realizing profits, used Reynolds's protected intellectual property to assure customers they could still use Reynolds's system. The exclusion did not apply to bar coverage or relieve Mercer of its duty to defend.

We are not persuaded by Mercer's contention that the allegation of Superior's intentional copyright infringement was sufficient to establish an intentional injury. The coverage provided for an "advertising injury," in the form of copyright infringement, did not limit the coverage to only negligent acts. Even if it did, by its nature, copyright infringement is a strict liability tort, and intent to injure is not relevant. See Major League Baseball Promotion Corp. v. Colour-Tex, Inc., 729 F. Supp. 1035, 1039 (D.N.J. 1990); see also Shapiro, Bernstein & Co. v. H. L. Green Co., 316 F.2d 304, 308 (2d Cir. 1963). To allege a claim for copyright infringement,

a plaintiff must state: "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of plaintiff's work." Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 203 (3d Cir. 2005). Intent is not an element of the claim.

(ii).

Next, we address Mercer's argument that coverage was excluded under the Computer Software Professional Activities Exclusion. As the motion judge correctly found,[5] that exclusion does not exclude coverage for Superior's alleged conduct. Construing the exclusion narrowly, this exclusion applies specifically to Superior's rendering of service or advice to its customers or other covered persons. It does not apply to a claim made by a third party for injuries caused by Superior where Superior was not selling computer software programs to that party.

Moreover, as the motion judge also found, adopting Mercer's interpretation would render numerous coverages provided under in Part II B meaningless, including the one provided for an advertising injury. According to the judge, there was "no way to apply [that e]xclusion to the portion of supplemental coverage that covers advertising injuries without rendering that coverage meaningless." "A contract

---

[5] Mercer misconstrues the motion judge's conclusion, stating he concluded that the policy would be left covering nothing if the computer software professional activities exclusion applied. However, the motion judge never stated the policy would cover nothing. Instead, he concluded that the coverages listed in Part II B would be meaningless if this exclusion applied.

'should not be interpreted to render one of its terms meaningless.'" Porreca v. City of Millville, 419 N.J. Super. 212, 233 (App. Div. 2011) (quoting Cumberland Cty. Improvement Auth. v. GSP Recycling Co., 358 N.J. Super. 484, 497 (App. Div. 2003)).

(iii).

Next, Mercer argues it was justified in denying coverage based on its policy's "prior publication" exclusion.[6] The "prior publication" exclusion states that Mercer does not insure "[i]njury arising out of oral or written publication of material whose first publication took place prior to the beginning of [the] policy or such coverage under [the] policy." Mercer contends that an advertisement published by Superior on its website in 2009 triggered the "prior publication" exclusion, thus warranting relief from its duty to defend the 2012 complaint. We find no merit to this contention as Reynolds never alluded to the 2009 publication and, in any event, it has no relation to the copyright infringement alleged in Reynolds's 2012 complaint. In order for Mercer's prior publication exclusion to apply, the injury alleged in the complaint had to have arisen out of those prior publications. There is no evidence that it did.

---

[6] Although defendant raised this exclusion below, the motion judge did not address it in his statement of reasons.

A-1027-18T4

IV.

Mercer also contends that the motion judge did not make adequate findings of fact and conclusions of law when he approved the total amount of Superior's defense costs in the Reynolds action, and that he did not properly allocate Mercer's responsibility between covered and non-covered claims. We disagree.

> "The general rule is that when the insurer has wrongfully refused to defend an action and is then required to reimburse the insured for its defense costs, its duty to reimburse is limited to allegations covered under the policy, provided that the defense costs can be apportioned between covered and non-covered claims."
>
> [SL Indus., 128 N.J. at 214-15.]

The burden of establishing the claimed fees' reasonableness is on the insured, but "the burden of [proving] . . . whether those fees can be allocated and, more importantly, how they should be allocated, . . . fall[s] upon the insurer who allowed the difficulties of allocation to accrue through its refusal to defend." Hebela v. Healthcare Ins., 370 N.J. Super. 260, 280 (App. Div. 2004).

Here, Mercer never challenged the reasonableness of Superior's revised defense cost.[7] Rather, Mercer challenged Superior's initial calculations, which were

---

[7] In its merits brief, Mercer only argued that Superior's defense costs were miscalculated, and the motion judge failed to allocate them between Superior's defense of covered and allegedly noncovered claims. At oral argument, Mercer

later corrected in response to Mercer's reconsideration motion. Mercer never raised any issue as to allocation and offered no proof suggesting a different allocation than determined by the judge. Under these circumstances, Mercer failed to meet its burden. We have no cause to disturb the result.

V.

Finally, because we agree with the motion judge's granting Superior summary judgment, we need not address Mercer's arguments about the denial of its motion for reconsideration of that judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

argued for the first time that it did challenge the reasonableness of those cost through a March 2, 2018 expert's report that was attached to its brief in support of reconsideration. Not only will we not consider arguments raised for the first time at oral argument, but a review of the expert's report reveals that it addressed the substantive issue of "Mercer's evaluation of the Reynold's suit" and its conclusion that coverage would not be provided, and tangentially referred to the reasonableness of the costs and the need for their allocation.

A-1027-18T4